**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NARRAGANSETT PELLET CORP.** | : | |
| | : | |
| | : | |
| **VS.** | : | |
| | : | **C.A. No. 06-464** |
| | : | |
| **CITY OF EAST PROVIDENCE, through its Treasurer, KEVIN FITZGERALD; ALBERT QUATTRUCCI, individually and in his capacity as Building Official of the City of East Providence; JOSEPH J. KLUCZNIK, individually and in his capacity as Fire Chief of the City of East Providence, and DAVID RAVE, individually and in his capacities as Fire Captain and Deputy State Fire Marshal; GEORGE S. FARRELL, in his Capacity as State Fire Marshal; and RENE R. COUTU, W. KEITH BURLINGAME, MARK J. BLACKBURN, MARION C. FILIPPI, DANA NEWBROOK, RICHARD O'CONNELL, STEWART D. PEARSON, GORDON PREISS, and HENRY RICHARD, JR., in their capacities as members of the FIRE SAFETY CODE BOARD OF APPEAL AND REVIEW; and THOMAS B. COFFEY, Jr., in his capacity as Executive Director of the Fire Safety Code Board of Appeal and Review** | : | |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Now comes the Plaintiff and moves that this Honorable Court for an Order temporarily restraining and enjoining Defendant Rave and all other City officials, as well as the Office of the State Fire Marshal and the State Fire Safety Code Board of Review and Appeal, from interfering with the issuance of a Certificate of Occupancy for the 275 Ferris Avenue premises, or otherwise interfering with the operations of Plaintiff; and further that the Defendant Quattrucci be ordered and directed to issue a Temporary Certificate of Occupancy for the 275 Ferris Avenue premises forthwith.

As grounds for its Motion, Plaintiff relies on its Verified Amended Complaint and the facts and law cited therein, as well as its Memorandum, and state that: Plaintiff , its employers, suppliers, and customers are suffering immediate and irreparable harm as a result of Defendants' actions; there is no adequate remedy at law; and there are no alternative adequate administrative or legislative remedies available.

Narragansett Pellet Corp.
By its attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
October 23, 2006

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
October 23, 2006

**CERTIFICATION**

I, the undersigned, hereby certify that on __________________________ I sent a true copy of the within by electronic service and/or fax and mail to all of the parties below:

Timothy Chapman, Esq.
Office of the City Solicitor
City Hall
145 Taunton Avenue
East Providence, RI 02914

James Lee, Esq.
Department of the Attorney General
150 South Main Street
Providence, RI 02903

______________________________

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **NARRAGANSETT PELLET CORP.** | : | |
| | : | |
| | : | |
| **VS.** | : | |
| | : | **C.A. No. 06-464** |
| | : | |
| **CITY OF EAST PROVIDENCE, through its Treasurer, KEVIN FITZGERALD; ALBERT QUATTRUCCI, individually and in his capacity as Building Official of the City of East Providence; JOSEPH J. KLUCZNIK, individually and in his capacity as Fire Chief of the City of East Providence, and DAVID RAVE, individually and in his capacities as Fire Captain and Deputy State Fire Marshal; GEORGE S. FARRELL, in his Capacity as State Fire Marshal; and RENE R. COUTU, W. KEITH BURLINGAME, MARK J. BLACKBURN, MARION C. FILIPPI, DANA NEWBROOK, RICHARD O'CONNELL, STEWART D. PEARSON, GORDON PREISS, and HENRY RICHARD, JR., in their capacities as members of the FIRE SAFETY CODE BOARD OF APPEAL AND REVIEW; and THOMAS B. COFFEY, Jr., in his capacity as Executive Director of the Fire Safety Code Board of Appeal and Review** | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION

This matter came before the Providence County Superior Court on Plaintiff Narragansett Pellet Corp.'s Verified Complaint for Injunctive Relief and Monetary Damages and Motion for Temporary Restraining Order and Injunctive Relief. The Plaintiff's Complaint and Motion sought the issuance of a Temporary Certificate of Occupancy for its business premises located at 275 Ferris Avenue, East Providence. Originally, this matter was set down for hearing on the Formal

and Special Cause Calendar for October 17, 2006. However, due to the factually intensive nature of this matter, it was deemed inappropriate for the Formal and Special Cause Calendar, and was referred for reassignment. The matter was reassigned to Hon. Justice Vogel on October 18, 2006. After conference with the parties' counsel, Hon. Justice Vogel issued a Pretrial Order directing the parties to exchange materials in order to promote efficiency and narrow the issues.

During that conference, this matter was continued for hearing on October 23, 2006. This continuance was done on request of the Assistant City Solicitor for East Providence, who indicated that he had personal issues to deal with out of state. During the conferences, it became apparent that there was some legal issue as to which officials needed to approve a Temporary Certificate of Occupancy, as well as the Superior Court's authority to offer relief. It was therefore agreed that the Plaintiff would amend its complaint in order to add the State Fire Marshal and the State Fire Safety Code Board of Appeal and Review as parties in order to permit this issue to be fully ventilated. In order to further explicate the legal issues at hearing, Plaintiff also submitted a Pretrial Memorandum. On the morning of October 23, 2006, just before hearing was to commence, Plaintiff was notified that this matter was being removed to this Court.

## II. ARGUMENT

The Plaintiff (hereinafter also referred to as, "NPC") has moved that this Court issue injunctive relief ordering the issuance of a Temporary Certificate of Occupancy, and restraining and enjoining the Defendant fire officials from interfering with the issuance of said Temporary Certificate of Occupancy or otherwise obstructing NPC's business operations. In order to obtain this relief, the Plaintiff must establish that: 1) there is a high likelihood of success on the merits of the claim; 2) immediate and irreparable harm will result without injunctive relief; 3) there is no adequate remedy at law; and 4) taking into account the public interest, the balancing of the

equities favors the granting of the temporary restraining order. *See* Martin v. Lincoln Bar, Inc., 622 A.2d 464, 468 (R.I. 1993). Where, as here, the injunction is of a mandatory nature, the right must be very clear, and the need must be particularly urgent. *See* Giacomini v. Bevilacqua, 118 R.I. 63, 372 A.2d 66 (1977).

The factual situation presented here warrants the issuance of injunctive and mandatory relief. Under the circumstances that we have described, the actions taken against the Plaintiff NPC clearly violate NPC's rights. Simply put, the NPC had a property interest in its building permit, as well as the legitimate expectation of being issued a Certificate of Occupancy on completion of the construction already approved in the process of being given that building permit. The Defendant Fire Marshal, however, has unlawfully interfered with that property interest and legitimate expectation by imposing additional conditions.

A review of the statutory procedures for issuing building permits and certificates of occupancy is essential to an understanding of the issues at hand. The issuance of building permits is governed by governed by R.I.G.L. § 23-27.3-114.1, which provides in pertinent part:

> (a) The building official shall examine or cause to be examined all applications for permits and amendments thereto within fifteen (15) days after filing. Before a permit is granted for the excavation or for the erection of any building or structure, a written statement shall be furnished by the owner from a town or city engineer as to the established grades. If the application or plans do not conform to the requirements of this code or of all applicable laws, the building official shall reject the application citing the specific sections of this code or applicable law upon which the rejection is based. If the building official is satisfied that the proposed work conforms to the requirements of this code and all laws applicable thereto, he or she shall issue a permit.

R.I.G.L. § 23-27.3-113.5 does grant the Fire Marshal a role in approvals at the initial building permit stage. R.I.G.L. § 23-27.3-113.5 reads, in pertinent part:

> **§ 23-27.3-113.5 Plans and specifications. –** The application for the permit shall be accompanied by not less than three (3) copies of specifications and plans drawn

> to scale, with sufficient clarity and detail dimensions to show the nature and character of the work to be performed. The plans and specifications shall have prior approval in accordance with the Fire Safety Code, chapters 28.1 – 28.39 of this title. . . .

R.I.G.L. § 23-28.1-6 in turn requires that prior to the issuance of the building permit, the Fire Marshal must review and approve said plans:

> **§ 23-28.1-6 Applicability to new or existing structures. –** (a) All regulations contained in this code apply to all structures unless specifically exempted. Prior to a building permit being issued, all plans for buildings regulated under this code shall be submitted to the authority having jurisdiction. The authority having jurisdiction shall approve or disapprove the completed set of plans within a reasonable time not to exceed ninety (90) days. When a change of use or type of occupancy is made in an existing building, the building shall conform to the requirements established by the rehabilitation building and fire code for existing buildings and structures, or if the rehabilitation building and fire code for existing structures is not applicable, to the requirements for new structures as related to the proposed use or type of occupancy.

As described in its Verified Complaint, NPC fulfilled these obligations. It submitted its application and plans, and a permit was issued by Building Official Albert Quattrucci. As we shall adduce at hearing, although the Fire Marshal at that time, Captain Wise, did not sign off on those plans, there is no requirement that the Fire Marshal do so. All that is required is that the Fire Marshal approve those plans. As Mr. Quattrucci informed NPC officials on October 10, 2006, he had been obtaining verbal approvals from the Fire Marshal as a standard operating procedure for some time. Mr. Quattrucci also informed NPC that that procedure had been followed in this case. Accordingly, NPC was the holder of a valid building permit.

By August 1, 2006, NPC had taken substantial actions in reliance upon that building permit. These actions included thousands of dollars in construction, and extensive business plans. It is by now well-established in this state that the holder of a valid building permit has the right to rely upon that building permit, and cannot be expected to comply with after-the-fact restrictions.

*See, e.g.,* Shalvey v. Zoning Bd. of Review of the City of Warwick, 210 A.2d 589 (R.I. 1965), Caprio v. Rizzo, 1981 R.I. Super. LEXIS 61 (R.I. Super. Ct. 1981) *quoting* Sea View Cliffs, Inc. v. Zoning Bd. of Review of the Town of North Kingstown, 112 R.I. 314, 309 A.2d 20. NPC has long since completed the construction plans already approved by Captain Wise, and therefore ought have been issued a Certificate of Occupancy by the Building Official, Mr. Quattrucci.

In this case, the Building Official appears to have been usurped by the present Fire Marshal, Captain Rave, as well as the State Fire Marshal and/or the Fire Safety Code Board of Appeal and Review. Captain Rave has essentially attempted to revoke the valid building permit issued to NPC by the Building Official, in that he has imposed an ever-changing set of additional conditions upon the issuance of a Temporary Certificate of Occupancy. Although for a number of months he would give NPC the impression that he had the authority to approve Certificates of Occupancy, he later withdrew from that position, indicating that the State Fire Marshal and/or the Fire Safety Code Board of Appeal and Review possessed that authority. (Verified Amended Complaint Exhibit J.) Defendants have apparently adopted Captain Rave's position during conferences with Justice Vogel.

NPC takes the position that neither Captain Rave, nor the State Fire Marshal, nor the Fire Safety Code Board of Appeal and Review possess authority over the issuance of Temporary Certificates of Occupancy. It is interesting to note that although the Board of Appeal and Review has issued an interpretative letter asserting its authority to approve Temporary Certificates of Occupancy, that letter cites absolutely no statutory support for its position. There is a very simple reason for that omission: there is no such statutory authority. Instead, the statutory authority to issue Temporary Certificates of Occupancy rests firmly with the Building Official, in this case, Mr. Quattrucci:

**23-27.3-120.2. Buildings hereafter altered.**

No building or structure subsequently enlarged, extended, or altered to change the use group classification, the fire-grading, the maximum live load capacity, or the occupancy load capacity, in whole or in part, shall be occupied or used until the certificate has been issued by the building official, certifying that the work has been completed in accordance with the provisions of this code, the rehabilitation building and fire code for existing buildings and structures, the fire safety code (chapters 28.1 -- 28.39 of this title) and the approved permits, and all of the applicable codes of all for which a permit is required. Any use or occupancy, which was not discontinued during the alterations, shall be discontinued within thirty (30) days after the completion of the alteration unless the required certificate is issued by the building official.

**23-27.3-120.3. Existing buildings.**

Upon written request from the owner of an existing building, the building official shall issue a certificate of use and occupancy, provided there are no violations of law or orders of the building official or the fire official pending, and it is established after inspection and investigation that the alleged use of the building has heretofore existed. Nothing in this code shall require the removal, alteration, or abandonment of, or prevent the continuance of the use and occupancy of, a lawfully existing building, unless the use is deemed to endanger public safety and welfare.

**23-27.3-120.6. Contents of certificate.**

The certificate shall certify compliance with the provisions of this code and the purpose for which the building or structure may be used in its several parts, and shall be issued by the building official within ten (10) days after final inspection; provided, that the provisions of the approved permits and of the applicable codes for which permits are required have been met. . . .

**23-27.3-120.5**

Upon the request of the holder of a permit, the building official may issue a temporary certificate of occupancy for a building or structure, or part thereof, before the entire work covered by the permit shall have been completed; provided, that the portion or portions may be occupied safely prior to full completion of the building without endangering life or public health, safety, and welfare; and, provided further, that the agencies having jurisdiction over permits issued under other applicable codes are notified of the decision to issue a temporary certificate.

Under the General Laws, the Fire Marshal does not make the determination as to whether a Certificate of Occupancy shall issue. The Fire Marshal's role in approving construction begins and ends at the planning stage – before substantial construction and expense has been undertaken. Although the Fire Marshal would apparently be entitled to notice in the case of a Temporary Certificate of Occupancy, it is ultimately the Building Official who determines whether the building can be occupied safely. Captain Rave, the State Fire Marshal, and Board of Review have therefore unlawfully attempted to assert authority in this matter. Building Official Quattrucci, on the other hand, has failed to exercise his authority in this matter. He has failed to respond to the request for a Certificate of Occupancy for several months, apparently acquiescing in Captain Rave's usurpation. As a result, NPC has been deprived of its legitimate expectation that it would be issued a Certificate of Occupancy and be permitted to operate its business. We anticipate that at hearing, Defendant fire officials will argue that it needs to be able to approve the issuance of Temporary Certificates of Occupancy in order to protect public safety. We disagree. Even if the fire officials might disagree with a Building Official's assessment of whether a Temporary Certificate of Occupancy should issue, the state fire officials have other remedies under R.I.G.L. § 23-28.1-7:

> **§ 23-28.1-7 Conformity required. –** (a) No building shall be constructed for, used for, or converted to, any occupancy regulated by the code, and no addition shall be made to a building except in accordance with the applicable provisions of the code or the rehabilitation building and fire code for existing buildings and structures, as applicable.
>
> (b) Any existing structure that is not in conformity with the provisions of this code is governed by the following:
>
> (1) The authority having jurisdiction is authorized to give building owners a reasonable notice of fire safety code violations and establish a timetable for compliance or, in cases of practical difficulty, establish a time by which the owner must petition to the fire safety code board for a variation.

> (2) The fire marshal, or his or her designee within the division, or a nonsalaried deputy state fire marshal in accordance with guidelines established by the fire marshal, has the authority to summarily abate any condition which presents immediate danger to life, these conditions shall include improper management or use of flammable and combustible materials, liquids and gasses, pyrotechnics, fireworks or explosives, malfunctioning automatic sprinklers, fire alarms and emergency lighting, malfunctioning heating and electrical systems, and blocked or inadequate exits or means of egress, and such other conditions as may be established by the Fire Safety Code Board of Appeal and Review. A failure to abate a condition that presents a clear and immediate danger to life shall be grounds for the person issuing the order to abate, to require that the premises be vacated, this action shall be either authorized by the fire marshal or a designee of the fire marshal who has been given advanced written authority by the fire marshal to approve such actions.

Under R.I.G.L. § 23-28.1-7, the fire officials may take various actions in order to deal with any Temporary Certificate of Occupancy that they might feel was improvidently granted. However, R.I.G.L. § 23-28.1-7 does impose due process standards on the fire officials. Not only must the owner be given notice of the violations, but must also be given a reasonable amount of time to remedy the situation. The fire officials may only take summary action to vacate the building in the event that an "immediate danger to life exists." What the Defendants have done here, of course, is to effectively summarily vacate the building without ever having to respect the due process set out in the statute. The Defendants have never made a specific finding that such an "immediate danger to life exists" that the building must be summarily vacated. For that matter, as set out in our Verified Complaint, the Defendants apparently could not even give notice of precisely what violations they found for some time. More importantly, from our perspective, NPC was not given a reasonable amount of time to remedy the situation before the Fire Marshal insisted upon vacating the building.

The Defendants have further aggravated this violation of NPC's rights not only by imposing additional conditions on a Certificate of Occupancy, but by imposing changing and

inconsistent conditions. When NPC first contemplated locating at the 275 Ferris Avenue premises, one of its very first moves was to visit the former Fire Marshal, Captain Curtis Wise, to discuss code compliance. It was on Captain Wise's recommendation that NPC hired Dana Newbrook -- a member of the Fire Safety Code Board of Appeal and Review – in order to ensure that compliance. Captain Wise reviewed the plans submitted by Dana Newbrook, and approved them. Later, Captain Rave – an Assistant State Fire Marshal -- would express his disagreement with whether the construction plans complied with applicable codes. As described in our Verified Amended Complaint, On August 8, 2006, Captain Rave indicated that if NPC would change its specifications so as to avoid the use of wood dust, NPC would have its Temporary Certificate of Occupancy within a week. Although NPC did change its specifications, no Temporary Certificate of Occupancy was issued. Instead, several weeks later, W. Keith Burlingame – another member of the Fire Safety Code Board of Appeal and Review – would assist in the development of a third-party report that identified areas that Captain Rave had not previously discussed in his original August 7, 2006 deficiency report. Furthermore, that third-party review found fault with the design of Mr. Newbrook. In short, four different fire officials have been consulted in connection with this project – two of whom serve on the Board — but have given different advice at different times. This inability to arrive at a clear standard for code compliance itself threatens a constitutional violation.

As we shall adduce at hearing, NPC has made every effort to cooperate with the fire officials' changing standards and demands. However, the Defendants' approach has become increasingly obstructive and punitive. Captain Rave's October 4, 2006 communication, wherein he disavowed authority over Temporary Certificates of Occupancy, took a downright hostile turn. Captain Rave's letter indicated that he was not an employee of NPC and did not have time to deal

with them. That correspondence further attempts to demand that NPC only communicate with him by certified mail – a blatant attempt to slow the process. (Verified Amended Complaint Exhibit J.) As also described in its Verified Amended Complaint, on numerous occasions, NPC has attempted to supply information and plans, only to be turned away for frivolous reasons. Most glaringly, Captain Rave has refused to accept submissions of some plans – even though his approval for some plans, such as those for egresses, was necessary to allow NPC to proceed with other plans. More recently, Defendants issued a cease-and-desist order revoking NPC's permission to continue testing machinery. Still later, Captain Rave issued an order demanding that the raw material be removed from the premises.

The end result of the actions of Captain Rave and his co-defendants threatens immediate and irreparable harm, for which there is no adequate remedy at law. Although NPC has attempted to cooperate with fire officials for several months, matters have come to a crisis point. Without the issuance of a Temporary Certificate of Occupancy, NPC will be unable to begin manufacturing. As a result, it will be unable to meet its contractual obligations to supply wood pellets to various vendors, and generate the income necessary to pay its bills. As a result, NPC will simply be forced to go out of business. NPC employed approximately 33 employees – many of whom left jobs to work for NPC. As of this writing, at least approximately 20 have already been laid off due to lack of work. There is no other remedy that can be obtained in a sufficiently timely fashion to prevent this result.

Furthermore, the balance of the equities lies with the Plaintiffs. We fully anticipate that at hearing, the Defendants will argue that the balance of the equities in this matter should fall in favor of permitting the Fire Marshal to block the issuance of Temporary Certificates of Authority whenever he or she sees fit. We disagree with this position. NPC completely understands that it

has a positive duty to protect the safety of its workers and the general public. At no point has NPC ever attempted to elude its responsibilities for code compliance. Indeed, from the beginning, NPC has taken affirmative steps to ensure that compliance. Furthermore, at hearing, NPC will adduce evidence indicating that conditions at the 275 Ferris Avenue premises are such that operations can commence without endangering public safety.

When weighing the balance of the equities, it is rather significant to note that one of the major factors aggravating this situation is the apparent inability of the fire safety officials to give clear and consistent direction to those attempting to achieve code compliance. As we noted above, four different fire officials have expressed different opinions regarding what was necessary for NPC to achieve code compliance. Worse, while NPC has fully cooperated with attempts to supply information and plans for compliance, those efforts themselves are being balked.

It is beyond cavil that fire safety is of serious public importance. Certainly, recent events have riveted the public attention upon obvious and widespread failures of code compliance. However, the approach taken by the fire officials in this matter will not remedy these problems, but can only generate others. NPC is a conscientious business that all along demonstrated every intention to comply with applicable codes. Instead of cooperation, NPC has been met with inconsistent standards, and later, obstructive and punitive behaviors. At bare minimum, the Defendants' approach risks serious economic harm for the entire state. After all, other businesses can only regard NPC's fate as a cautionary tale about the hazards of doing business in the State of Rhode Island. Worse, the Defendants' approach undermines the very goals they hope to achieve. Education and cooperation are key to maintaining any public safety scheme. However, when public safety officials deal out arbitrary and capricious behavior, and attempt to exceed their authority, those public safety officials lose credibility. As a result, businesses will be much less

willing to consult with public safety officials to educate themselves about potential hazards and appropriate precautions. Furthermore, those businesses will also be much more reluctant to engage in voluntary compliance and cooperation, but instead will become increasingly evasive and adversarial, at the ultimate expense of public safety. In short, the course of conduct demonstrated by the Defendants cannot be countenanced if this state is ever to arrive at an effective means of ensuring reasonable safety standards.

Under the circumstances, NPC is entitled to injunctive relief in this matter. NPC will adduce at hearing that all along, it had a right to the issuance of a certificate of occupancy, but has been met with unlawful interference. Furthermore, NPC will adduce evidence demonstrating that there is no immediate danger to public safety if it is permitted to open for operations. Therefore, a Temporary Certificate of Occupancy serves an equitable remedy for the violation of NPC's rights.

## III. CONCLUSION

For the above-referenced reasons, the Narragansett Pellet Corp.'s Motion for Temporary and Injunctive Relief should be GRANTED.

Narragansett Pellet Corp.
By its attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
October 23, 2006

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
October 23, 2006

**CERTIFICATION**

I, the undersigned, hereby certify that on ___________________________ I sent a true copy of the within by electronic service and/or fax and mail to all of the parties below:

Timothy Chapman, Esq.
Office of the City Solicitor
City Hall
145 Taunton Avenue
East Providence, RI 02914

James Lee, Esq.
Department of the Attorney General
150 South Main Street
Providence, RI 02903

______________________________