**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **NARRAGANSETT PELLET CORP.** | |
| **VS.** | **C.A. No. 06-464** |
| **CITY OF EAST PROVIDENCE, through its Treasurer, KEVIN FITZGERALD; ALBERT QUATTRUCCI, individually and in his capacity as Building Official of the City of East Providence; JOSEPH J. KLUCZNIK, individually and in his capacity as Fire Chief of the City of East Providence, and DAVID RAVE, individually and in his capacities as Captain, East Providence Fire Department, East Providence Fire Marshal and Deputy State Fire Marshal; W. KEITH BURLINGAME, individually; CURTIS R. WISE, individually and in his capacity as Captain, East Providence Fire Marshal, East Providence Fire Marshal and Deputy State Fire Marshal; ROBERT POWERS, individually and in his capacity as Fire Alarm Inspector, City of East Providence** | |

**SECOND VERIFIED AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND FOR MONETARY DAMAGES**

**Parties**

1. Plaintiff, Narragansett Pellet Corp. (hereinafter, "Narragansett,") is a business corporation duly organized under the laws of the State of Rhode Island, with its principal place of business located at 275 Ferris Avenue, East Providence, Rhode Island.

2. Defendant, the City of East Providence, is a municipality organized under the laws of the State of Rhode Island.

3. Defendant, Kevin Fitzgerald, is the Treasurer of the City of East Providence, and is sued in his official capacity.

4. Defendant, Albert Quattrucci, is the duly appointed Building Official of the City of East Providence, and is sued in his official and individual capacities.

5. Defendant Curtis R. Wise, at all times relevant hereto, was a duly appointed Captain in the East Providence Fire Department, East Providence Fire Marshal, and Deputy State Fire Marshal until late July, 2006, and is sued in both his official and individual capacities.

6. Defendant, David Rave, at all times relevant hereto, is a duly appointed Captain in the East Providence Fire Department. He succeeded Curtis R. Wise as East Providence Fire Marshal Marshal in late July, 2006 and also serves as a Deputy State Fire Marshal. Defendant Rave is sued in both his official and individual capacities.

7. Defendant, Joseph J. Klucznik, is the duly appointed Fire Chief of the City of East Providence, and is sued in his official and individual capacities. Defendant Klucznik has supervisory authority over Defendant Rave and also possessed such authority over Defendant Wise during Defendant's Wise's tenure as Captain in the East Providence Fire Department, East Providence Fire Marshal, and Deputy State Fire Marshal until late July, 2006.

8. Defendant, W. Keith Burlingame, is a member of the Fire Safety Code Board of Review and Appeal. He is an attorney and is employed by Hughes Associates, Inc., a firm engaged in fire safety consulting. He is sued in his individual capacity.

9. Defendant, Robert Powers, is the duly appointed Fire Alarm Inspector for the City of East Providence, and is sued in his individual and official capacities.

## GENERAL ALLEGATIONS

### Narragansett's Establishment and Original Application for Building Permit

10. Narragansett is a new business concern, first incorporated in January, 2006. Narragansett was organized for the purpose of manufacturing wood pellets. These wood pellets

are manufactured from clean waste wood that would otherwise have been put in landfills, and are used in so-called "pellet stoves" for home heating purposes and/or cogeneration plants as an alternative to other energy sources, such as oil.

11. Several months prior to Narragansett's incorporation early in 2006, the current President of Narragansett and one of its original incorporators, William Carden, first contemplated entering into a lease for the premises located at 275 Ferris Avenue, East Providence, for the purposes of providing a base for Narragansett's business and manufacturing operations.

12. The 275 Ferris Avenue, East Providence premises were uniquely well-suited for the operations contemplated by Narragansett due to the fact that the premises already had silos for storage, ample power supplies and space, loading docks, and railway platform that was essential to operate its business.

13. During the month of December, 2005, as part of his investigation into the suitability of the premises located at 275 Ferris Avenue, William Carden met with the East Providence Fire Department's former Fire Marshal, Captain Curtis R. Wise, regarding the steps that would be necessary to bring the 275 Ferris Avenue premises in line with applicable fire and life safety codes.

14. Captain Wise advised Mr. Carden to obtain the services of an architect in order to assist in complying with the applicable fire and life safety codes.

15. Captain Wise recommended that Narragansett hire Dana Newbrook and his company, ai Design.

16. Dana Newbrook is a member of the Fire Safety Code Board of Review and Appeal. In the course of such work he is required to exercise regulatory and supervisory jurisdiction over the Fire Marshal of the City of East Providence.

17. Dana Newbrook is the President of ai Designs Ltd, a Rhode Island corporation in the business of rendering architectural services.

18. During the month of February, 2006, Mr. Carden retained the services of Dana Newbrook and ai Designs Ltd.

19. When deciding to retain Mr. Newbrook and his firm, Mr. Carden relied upon Defendant Wise's recommendation and Mr. Newbrook's expertise in fire and life safety code issues. At the time of hiring Mr. Newbrook and ai Designs Ltd., Narragansett was not told of and was not aware of Mr. Newbrook's official position.

20. On or about January 30, 2006, Narragansett was incorporated by Mr. Carden.

21. On or about January 31, 2006, the day after Narragansett became incorporated, Narragansett officials met with East Providence's Zoning Officer, Edward Pimental, and Jeanne M. Boyle, East Providence's Planning Director.

22. During that meeting, Narragansett discussed with Pimental and Boyle its plans to operate a wood pellet manufacturing business.

23. Said discussion included a description of the manufacturing process.

24. Narragansett officials followed up the January 31, 2006 meeting with a written communication dated February 2, 2006 describing Narragansett's plans and manufacturing processes. (See Exhibit A.)

25. On or about February 10, 2006, Narragansett received zoning/planning approval.

26. During the months of February, March, and April, Narragansett obtained financing from Sovereign Bank and the Small Business Administration.

27. Additionally, Narragansett obtained financing from the East Providence Economic Development Commission of approximately $99,000.

28. Narragansett also obtained financing through the Rhode Island Economic Development Corporation in the amount of $125,000.

29. On or about April 10, 2006, Narragansett Pellet Corp. entered into a ten-year lease for the premises at 275 Ferris Avenue, East Providence. The purpose of this lease was to provide a base for Narragansett's business and manufacturing operations.

30. Narragansett also applied for appropriate building permits, and submitted all required plans. Such plans were prepared by ai Designs, Ltd.

31. On or about May 8, 2006, Narragansett officials met with Fire Marshal Captain Wise and City Fire Alarm Inspector Robert Powers, as well as the firm that would be responsible for installing Narragansett's fire alarm and sprinkler systems, and further discussed their proposed manufacturing operations. This communication was followed up by an e-mail from Mr. Carden further describing the operations.

32. On or about May 23, 2006, the City of East Providence, through its Building Official, Albert Quattrucci, issued Building Permit A31628 approving Narragansett's construction plans for the 275 Ferris Avenue premises. (See Exhibit B, attached.) A set of plans detailing the work to be performed was stamped: "Approved for Construction."

33. Upon issuance of Building Permit A31628, Narragansett commenced construction at the 275 Ferris Avenue premises in accordance with the Permit.

34. During the months of July and August, 2006, Narragansett entered into arrangements for raw materials, as well as the railway cars required to ship said raw materials.

35. Narragansett also entered into sales contracts for the finished wood pellets.

36. Narragansett had anticipated beginning the manufacturing process in August-September, 2006.

37. During July, 2006, Narragansett requested a Temporary Certificate of Occupancy from the Building Official.

38. At the time that Narragansett requested a Temporary Certificate of Occupancy, Narragansett believed that it had substantially completed the construction necessary to comply with the Fire Code and Life Safety Codes under the plans approved with the issuance of Building Permit A31628.

39. On or about July 10, 2006, Mr. Carden received an e-mail from Robert Powers, the City's Fire Alarm Inspector. Said e-mail indicated that the Fire Marshal's office would review the request for a Temporary Certificate of Occupancy once all of the life safety plans, sprinkler plans with proper building permits and successful completion of Phase One of the Fire Alarm upgrades had been inspected in all sections of the building.

40. On or about July 11, 2006, Mr. Powers signed off on approved plans.

**Defendant Rave Interferes with Occupancy**

41. Roughly during the end of July, 2006, Mr. Carden contacted City officials regarding the status of his request for a Temporary Certificate of Occupancy. He was instructed to contact the Fire Department.

42. Mr. Carden contacted the Fire Department as instructed, and a meeting with Captain Rave was scheduled for on or about August 1, 2006.

43. On or about August 1, 2006, Captain Rave visited the 275 Ferris Avenue premises along with Mr. Powers, Narragansett officials, and others.

44. At that meeting on or about August 1, 2006, Captain Rave took the position that the Building Permit A31628 had not been validly approved because the former Fire Marshal did not approve and/or sign the building permit.

45. On October 10, 2006, Building Official Quattrucci represented to Narragansett officials that the former Fire Marshal had verbally approved the plans submitted with the application for Building Permit A31628, and that such verbal approvals had been the longstanding practice.

46. Also at the meeting on or about August 1, 2006, Defendant Powers raised as an area of concern the fact that a records storage business was adjacent to Narragansett.

47. Also at the meeting or about August 1, 2006, Defendant Powers and Rave raised the issue that Narragansett's entire premises should be considered a High Hazard area.

48. On or about August 8, 2006, Captain Rave met with Narragansett officials and presented them with a list of areas in which he found that, in his opinion, the plans submitted did not conform to the Rhode Island Uniform Fire Code and Rhode Island Life Safety Code. (See Exhibit C, attached.)

49. Defendant Powers was also present at said meeting of August 8, 2006.

50. Defendant Powers asserted that only the official permit had been signed, and that all other plans had been put on hold two weeks before until it was determined how the building had to be modified.

51. Defendant Powers and Rave also raised concerns about the raw materials being used in the process of manufacturing the wood pellets.

52. Later, it came to Plaintiff's attention Defendant Powers had also "scratched out" his initial approval of the plans that he had approved on or about July 11, 2006.

53. At the meeting of August 8, 2006, Captain Rave sought to change Narragansett's hazard classification. Captain Rave took the position that the use of some raw materials used by Narragansett constituted "wood dust," as defined by the Code, and would therefore place the entire 275 Ferris Avenue premises in the High Hazard Industrial class.

54. Narragansett's new classification as High Hazard Industrial, as demanded by Captain Rave, would require hundreds of thousands of dollars in additional construction work that had not been anticipated when Narragansett originally planned its budget for construction needed for the 275 Ferris Avenue property.

55. During the August 8, 2006 meeting, Captain Rave and Narragansett officials discussed submissions of new plans, machinery layouts, and data and specifications that Captain Rave would require.

56. During the August 8, 2006 meeting, Captain Rave indicated that he would let them know whether the State Fire Marshal would be involved in a review of said new plans, machinery layouts, and data and specifications, or whether he would arrange for third party review.

57. On the afternoon of August 8, 2006, Captain Rave indicated to Donna Carden-Harker, Narragansett's office manager, by telephone that he would be having a third-party review performed to be sure that life/safety issues were being handled and that the operation was in compliance.

58. On the afternoon of August 8, 2006, William Carden spoke with Captain Rave by telephone. Mr. Carden indicated that, as an accommodation to Captain Rave, he would be

changing his specifications for raw material so as to obviate the need for wood dust. Captain Rave indicated that if Mr. Carden did that, he would have his Temporary Certificate of Occupancy issued the next week.

59. Mr. Carden in fact changed his specifications for raw material so that he would no longer be using sawdust in his manufacturing process.

60. On or about August 16, 2006, Narragansett submitted an application for a new building permit, as well as a Plan Review Application. Said application was noted as being without prejudice to Narragansett's rights under the first building permit.

61. Narragansett submitted these materials in response to Captain Rave's instructions. Captain Rave had indicated that this new permit was necessary due to the egress changes demanded in his list of deficiencies dated August 7, 2006.

62. On or about August 23, 2006, Hughes Associates, Inc., the third-party reviewer selected by Captain Rave, issued its report.

63. Defendant W. Keith Burlingame participated in said review as an employee of Hughes Associates, Inc.

64. Defendant W. Keith Burlingame did not disclose his membership on the Fire Code Board of Appeal and Review to Narragansett.

65. Said report asserted that Area A and portions of Area B would be considered "high hazard -- industrial spaces. Any area that handles wood chips in the open, on conveyors that are open, or where chips are ground or reduced in size is considered high hazard – industrial."

66. On or about September 6, 2006, Captain Rave issued a new deficiency list to Narragansett. (See Exhibit D, attached.) This document substantially added to the original list of

deficiencies, requiring the remediation of numerous items that had not been identified in the earlier list. This document also continues to classify Narragansett as High Hazard.

67. On or about September 8, 2006, Captain Rave contacted Donna Carden-Harker and advised her that he was rejecting the plans submitted in connection with the August 16, 2006 building permit application, and demanded that she pick them up. No information was provided as to the basis of this rejection.

68. By September 11, 2006, Narragansett had the necessary machinery in place to begin operations, and had also received the delivery of raw materials.

69. On September 11, 2006, Narragansett officials also met once again with Captain Rave and other City officials regarding compliance with Captain Rave's deficiency list.

70. On or about September 15, 2006, in accordance with Captain Rave's instructions, Narragansett submitted a plan for addressing the deficiency list of September 6, 2006. (See Exhibit E, attached.)

71. In said communication Narragansett agreed that that area in the premises wherein the raw materials would be stored (hereinafter, "Area A,") would be deemed a High Hazard Area. Additionally, Narragansett agreed that a portion of the manufacturing area (hereinafter, "Area B") would also be deemed a High Hazard Area. That portion would encompass the grinder, which was the piece of machinery that would generate "wood dust," as defined by law.

72. Said communication also provided various items of information and product specifications demanded in the September 6, 2006 deficiency list.

73. On September 15, 2006, Narragansett officials also met with Captain Rave to discuss the plan set out in the September 15, 2006 correspondence. At that time, Captain Rave indicated

that he would be willing to work with Narragansett on arrangements for an in-house cleaning to deal with issues of dust accumulations for a thirty-day trial period.

74. By September 21, 2006, Narragansett had received no communication in response to its submission of September 15, 2006. Accordingly, on or about September 21, 2006, William Carden e-mailed Captain Rave giving him further updates on their progress in addressing the deficiency list of September 6, 2006, and renewing the request for a Temporary Certificate of Occupancy. (See Exhibit F, attached.)

75. On or about September 25, 2006 and October 23, 2006, Hughes Associates demanded payment from Narragansett in the amount of $14,085.02.

76. On or about September 27, 2006, Captain Rave wrote to Mr. Carden, giving him a list of items that he required for consideration of a Temporary Certificate of Occupancy. (See Exhibit G, attached.)

77. Said September 27, 2006 communication demanded that all of Area B be considered a High Hazard area before a Temporary Certificate of Occupancy would be issued.

78. Said September 27, 2006 communication also demanded further drawings and product specifications, as well as a timeline for completion of all deficiencies.

79. Captain Rave's September 27, 2006 communication also imposed further conditions upon the issuance of a Temporary Certificate of Occupancy. The September 27, 2006 also indicated that during any Temporary Certificate of Occupancy period, Narragansett would only be permitted to operate during the 1st and 2nd shifts, and would also be required to hire a detail fireman during said shifts. Captain Rave also rejected any possibility of an in-house cleaning system.

80. Captain Rave's September 27, 2006 communication made no reference to the documents submitted on or about September 15, 2006, responding to his deficiency list.

81. On or about September 29, 2006, Narragansett, through its counsel, responded to Captain Rave's September 27, 2006 communication. Said communication was copied to Building Official Quattrucci. (See Exhibit H, attached.)

82. Narragansett's September 29, 2006 communication responded to the list provided by Captain Rave in his September 27, 2006 communication, including the timeline for completion of deficiencies required in the September 27, 2006 communication. Narragansett agreed to consolidate the grinder into Area A.

83. The September 29, 2006 communication disagreed with the proposition that only 1st and 2nd shifts be permitted during the Temporary Certificate of Occupancy stage, as the construction could be done within existing operations without causing a hazard. Additionally, the September 29, 2006 communication disagreed with the proposition that a detail firefighter should be provided for. However, Narragansett proposed as alternatives that it 1) pay for one hour per day of detail firefighter time for random daily inspections; or 2) establish a connection between the Fire Department and Narragansett's closed circuit television system.

84. On or about October 4, 2006, Narragansett had completed a supplement to its September 29, 2006 correspondence further updating Captain Rave on the status of plan completion. (See Exhibit I, attached.)

85. When Donna Carden-Harker attempted to submit the October 4, 2006 correspondence, the Fire Chief refused to accept the documents because the appropriate person was not available. Also rejected at the same time was an updated egress plan prepared by ai Designs that Captain Rave had demanded.

86. Unless this egress was approved, it would have been impossible to finish the remainder of these submissions.

87. On or about October 5, 2006, Ms. Carden-Harker returned to fire department headquarters and was successful in submitting the October 4, 2006 correspondence.

88. By letter headed October 4, 2006, Captain Rave wrote in response to the October 4, 2006 correspondence. (See Exhibit J, attached.)

89. In his October 4, 2006 letter, Captain Rave indicated that the issuance of a Temporary Certificate of Occupancy was beyond the scope of his authority, and indicated that the State Fire Marshal and/or the Fire Safety Code Board of Appeal and Review would be required to grant such a Certificate. No state law was cited in support of this proposition. Captain Rave also indicated that before he would recommend issuance of a Temporary Certificate of Occupancy to the State Fire Marshal, he would require compliance with the list of items that he had provided in his letter of September 27, 2006. No reference was made to the authority of the city building inspector to issue a certificate of occupancy or a temporary certificate of occupancy.

90. Said correspondence also requested that further correspondence be conducted by certified mail.

91. On or about October 6, 2006, Narragansett had long since completed all of the work required under Building Permit A31628. Accordingly, Narragansett requested that Albert Quattrucci issue a Certificate of Occupancy. (See Exhibit K, attached.)

92. On or about October 10, 2006, Ms. Carden-Harker attempted to submit further updates to Captain Rave and Albert Quattrucci. (See Exhibit L, attached.)

93. Said submission was undertaken at the request of Assistant City Solicitor Timothy Chapman who, through counsel, advised Plaintiff that the Fire Department was contending that it

had never seen the original building permit. He stated that he would provide a copy of the original permit to the Fire Department.

94. Even after receiving a copy of the original building permit, the Fire Department's secretary refused to accept this submission, stating that Plaintiff needed to submit an application for a new building permit along with the complete set of plans required with said applications.

95. Ms. Carden-Harker attempted to explain to Captain Rave that this submission was in response to his September 27, 2006 list rather than an application for a new building permit.

96. When Captain Rave insisted on an application for a new building permit and the complete set of plans required with said applications, Ms. Carden-Harker supplied a complete set of plans. However, when she returned to Fire Department, she was told that she could not submit them because she did not have a new building permit application.

97. With the assistance of Building Official Quattrucci, Narragansett prepared and submitted a new application for a building permit, explaining that this permit only supplemented Building Permit A31628.

98. On October 10, 2006, Captain Rave also refused to accept Ms. Carden-Harker's submission of fire alarm plans, asserting that they needed to be submitted by a licensed electrician.

99. On or about October 10, 2006, Narragansett was operating one of its pellet machines for testing purposes when one of the machines began smoldering. Narragansett used its fire extinguishers and hoses, and brought the smoldering under control.

100. Narragansett's use of the fire hose triggered an alarm at the Fire Station.

101. Captain Rave responded to said alarm.

102. On or about October 11, 2006, Captain Rave instructed the Building Manager of Narragansett's landlord, Andrew Nyman, to remove the fire hose from Narragansett's premises.

103. On or about October 11, 2006 an architect from Ai Designs attempted to supply further updated plans to the fire department. Those plans were physically rejected as well.

104. On or about October 11, 2006, Building Official Quattrucci issued a Cease and Desist Order, forbidding Plaintiff to begin manufacturing operations until a Certificate of Occupancy is issued.

105. Said Cease and Desist Order was issued to Narragansett's landlords, Ferris Avenue Realty LLC.

106. On or about October 13, 2006, Captain Rave sent correspondence to Ferris Avenue Realty LLC, instructing Narragansett to cease and desist from testing processes and construction. Said correspondence also instructed Narragansett to remove all raw materials from the building within 48 hours.

**Attempts to Obtain Relief from the Fire Code Board of Review and Appeal**

107. The instant action was filed on or about October 16, 2006, in Providence County Superior Court.

108. Hearing was scheduled for October 23, 2006 on Plaintiff's Motion for Temporary Restraining Order.

109. On the morning of October 23, 2006, Plaintiff was informed that this matter was removed to this Court.

110. After conference, it was suggested that the parties engage in negotiations, and attempt to arrive at a plan to achieve compliance.

111. Narragansett agreed to do so, without prejudice to its position that a valid building permit had already been issued.

112. On or about November 3, 2006, the Fire Code Board of Review and Appeal issued a decision authorizing the East Providence Fire Marshal's office ". . . to approve the Building Official's discretionary issuance of a series of proposed Temporary Certificates of Occupancy . . ." (Exhibit M.)

113. Said November 3, 2006 decision called for a series of Temporary Certificates of Occupancy that would allow Narragansett an increasing scope of operations, provided that certain conditions were met.

114. Narragansett, along with its consultants, immediately began to complete the submissions that would allow them to complete the various Phases of the Decision that would allow them to obtain the Temporary Certificates of Occupancy that would permit them to operate.

115. Defendants have engaged in a pattern of conduct aimed at delay and/or frustrating Narragansett's efforts to complete the various Phases of the Decision, including, but not limited to, frivolous refusals to accept submissions of various materials, delays in necessary inspections and reviews, demands for resubmission of various materials already provided, and demands for irrelevant information.

116. Defendant Rave has also refused to provide specific direction as to what items would be needed to complete the Phases.

117. By January 2, 2007, Narragansett succeeded in obtaining a five-week Temporary Certificate of Occupancy in accordance with Phase III of the Decision.

118. Under the five-week Temporary Certificate of Occupancy, Narragansett was permitted to continue to operate four pellet mills, two shifts a day, rather than the two mills one shift per day as outlined in the Decision.

119. Defendant Rave had authorized this expansion of operations because he was satisfied that Narragansett had sufficiently provided for safety measures to his satisfaction.

120. Phase IV of the Decision, which would permit the issuance of a nine-week Temporary Certificate of Occupancy, would permit two shifts a day with all mills operating. Once systems capacity was determined, and installation and construction were complete, a full Certificate of Occupancy could be issued.

121. By January 2, 2007, Narragansett had in fact completed nearly all of the items required to proceed to Phase IV.

122. In order to proceed to Phase IV, Narragansett required additional financing.

123. As a condition of said financing, Narragansett's lenders required that they be provided with correspondence from Defendant Rave verifying what items of work remained outstanding before a Certificate of Occupancy could be issued, and the time line in which Defendant Rave required them to be completed.

124. On or January 9, 2007, Narragansett's consultant e-mailed Defendant Rave with draft correspondence for Defendant Rave's signature verifying what items of work remained outstanding before a Certificate of Occupancy could be issued, and the time line in which Defendant Rave required them to be completed. Said correspondence explained that this verification was necessary for financing. (See Exhibit N.)

125. By reply e-mail of that same date, Defendant Rave indicated that he would review said letter and "get back to" Narragansett's consultant. (See Exhibit N.)

126. During the month of January, Narragansett's consultant communicated with Defendant Rave regarding what further steps needed to be taken, and responded to various questions and concerns that Defendant Rave had.

127. By letter dated January 26, 2007, Defendant Rave provided Narragansett's consultant with a list of various other work that he required before Narragansett would be permitted to progress to Phase IV. (See Exhibit O.)

128. Captain Rave agreed to defer one of the items necessary to proceed to Phase IV, that of constructing the egress corridors, until March, 2007 in order to permit Narragansett to obtain the necessary financing. (See Exhibit O.)

129. On or about January 30, 2007, Captain Rave performed a "walk-through" of the Narragansett premises.

130. Once said "walk-through" was performed, it was determined that there were still two items that needed to be completed before Narragansett could proceed to Phase IV. During the time that these two items were completed, Narragansett was to suspend operations.

131. On or about January 31, 2007, Narragansett's consultant forwarded to Defendant Rave what they believed would be a final draft of the communication required by Narragansett's lenders, indicating that said letter needed to be approved in order to close on financing over the next several days. (See Exhibit P.)

132. On or about January 31, 2007, Defendant Rave indicated to Narragansett's consultant that said correspondence must come from the City Solicitor's office rather than through him.

133. Narragansett, through its counsel, contacted Assistant Solicitor Chapman regarding said correspondence on the morning of February 1, 2007, but Chapman did not provide said correspondence.

134. On or about February 6, 2007, Defendant Rave visited Narragansett again.

135. At the time of that visit, the two items referenced were underway, but not completed.

136. It was agreed that this work would be completed, after which Defendant Rave would return to the plant for inspection. In the interim, Narragansett would suspend operation.

137. The five-week Temporary Certificate of Occupancy was to expire on or about February 5, 2007.

138. Narragansett completed said the remaining two items on or about February 9, 2007.

139. Narragansett's consultant contacted Defendant Rave on or about February 9, 2007, regarding the inspection.

140. Defendant Rave indicated that he would not be able to inspect the work until February 15, 2007.

141. Narragansett, through its counsel, contacted the Assistant City Solicitor and indicated that it would assume that the five-week Temporary Certificate of Occupancy would remain in full force and effect until such time as Captain Rave was available to perform the inspection. (See Exhibit Q.)

142. On or about February 9, 2007, Defendant Rave contacted Mr. Nyman and Ferris Ave Realty, LLC, in writing, indicating that if Narragansett were to operate, the Fire Department was to be contacted immediately. Said communication suggested that Narragansett's operations

would create an immediate safety hazard. (See Exhibit R.) These communications resulted in counsel for the landlord threatening legal action against Narragansett.

143. After Narragansett's counsel contacted the City Solicitor William Conley, Defendant Rave agreed to perform the inspection on February 13, 2007, and to extend the Phase III Temporary Certificate of Occupancy until March 9, 2007.

144. On or about February 15, 2007, Defendant Rave contacted Narragansett's landlord directly again indicating that it would not agree to another extension of the Phase III Temporary Certificate of Occupancy unless the egress corridors were at least begun. (See Exhibit S.)

145. Such communication has resulted in communications with the landlord threatening eviction proceedings against Narragansett.

**COUNT I – INJUNCTIVE RELIEF**

146. Plaintiff realleges those allegations contained in the above Paragraphs as if fully restated therein.

147. The issuance of building permits is governed by R.I.G.L. § 23-27.3-114.1, which provides in pertinent part:

> (a) The building official shall examine or cause to be examined all applications for permits and amendments thereto within fifteen (15) days after filing. Before a permit is granted for the excavation or for the erection of any building or structure, a written statement shall be furnished by the owner from a town or city engineer as to the established grades. If the application or plans do not conform to the requirements of this code or of all applicable laws, the building official shall reject the application citing the specific sections of this code or applicable law upon which the rejection is based. If the building official is satisfied that the proposed work conforms to the requirements of this code and all laws applicable thereto, he or she shall issue a permit.

148. R.I.G.L. § 23-27.3-113.5 requires that with the application for a building permit, the applicant submit specifications and plans that ". . . shall have prior approval in accordance

with the Fire Safety Code." R.I.G.L. § 23-28.1-6 in turn requires that prior to the issuance of the building permit, the Fire Marshal must review and approve said plans.

149. R.I.G.L. § 23-27.3-114.4 requires that that the building official sign building permits.

150. Captain Rave's predecessor, Captain Wise, approved the plans submitted in connection with Building Permit A31628.

151. At no point does any applicable law require the signature of a Fire Marshal on a building permit. Therefore, Captain Rave's contention that Building Permit A31628 was invalid without the signature of Captain Wise was incorrect.

152. Accordingly, as of May 23, 2006, Plaintiffs were issued a valid building permit by Defendant Quattrucci that had already received the requisite approval by the Fire Marshal.

It is well-settled law in the State of Rhode Island that a party who receives a valid building permit is permitted to rely thereon, and cannot be subjected to additional or different conditions after the issuance of said permit. Building permits are presumptively valid. *See, e.g.,* Shalvey v. Zoning Bd. of Review of the City of Warwick, 210 A.2d 589 (R.I. 1965), Caprio v. Rizzo, 1981 R.I. Super. LEXIS 61 (R.I. Super. Ct. 1981) quoting Sea View Cliffs, Inc. v. Zoning Board of Review of the Town of North Kingstown, et al., 112 R.I. 314, 309 A.2d 20.

153. The Plaintiffs have completed the construction plans approved with the issuance of Building Permit A31628, including that work required to comply with applicable codes under said plans, and have taken other substantial actions in reliance upon the issuance said Building Permit A31628.

154. The provisions for Certificates of Occupancy is governed by R.I.G.L. § 23-27.3-120.2, R.I.G.L. § 23-27.3-120.3, and R.I.G.L. § 23-27.3-120.6, which read, in pertinent part:

**23-27.3-120.2. Buildings hereafter altered.**

No building or structure subsequently enlarged, extended, or altered to change the use group classification, the fire-grading, the maximum live load capacity, or the occupancy load capacity, in whole or in part, shall be occupied or used until the certificate has been issued by the building official, certifying that the work has been completed in accordance with the provisions of this code, the rehabilitation building and fire code for existing buildings and structures, the fire safety code (chapters 28.1 -- 28.39 of this title) and the approved permits, and all of the applicable codes of all for which a permit is required. Any use or occupancy, which was not discontinued during the alterations, shall be discontinued within thirty (30) days after the completion of the alteration unless the required certificate is issued by the building official.

**23-27.3-120.3. Existing buildings.**

Upon written request from the owner of an existing building, the building official shall issue a certificate of use and occupancy, provided there are no violations of law or orders of the building official or the fire official pending, and it is established after inspection and investigation that the alleged use of the building has heretofore existed. Nothing in this code shall require the removal, alteration, or abandonment of, or prevent the continuance of the use and occupancy of, a lawfully existing building, unless the use is deemed to endanger public safety and welfare.

**23-27.3-120.6. Contents of certificate.**

The certificate shall certify compliance with the provisions of this code and the purpose for which the building or structure may be used in its several parts, and shall be issued by the building official within ten (10) days after final inspection; provided, that the provisions of the approved permits and of the applicable codes for which permits are required have been met. . . .

155. The provision of a Temporary Certificate of Occupancy is governed by R.I.G.L. § 23-27.3-120.5, which reads:

Upon the request of the holder of a permit, the building official may issue a temporary certificate of occupancy for a building or structure, or part thereof, before the entire work covered by the permit shall have been completed; provided, that the portion or portions may be occupied safely prior to full completion of the building without endangering life or public health, safety, and welfare; and, provided further, that the agencies having jurisdiction over permits issued under

other applicable codes are notified of the decision to issue a temporary certificate.

156. At no point do the statutes governing the issuance of certificates of occupancy give the Fire Marshal the authority to reject requests for certificates of occupancy; that authority is reserved to the Building Official.

157. At no point had the Building Official, Albert Quattrucci, determined that any violations of any applicable Code exist.

158. At no point has the Building Official, Albert Quattrucci, made any determination as to whether a Temporary Certificate of Occupancy or a Certification of Occupancy should issue.

159. Defendant Rave interfered the Narragansett's ability to obtain a Temporary Certificate of Occupancy or Certificate of Occupancy for the 275 Ferris Avenue premises, in that he has 1) attempted to impose additional requirements upon the building project as a condition of receipt of a Certificate of Occupancy, despite the issuance of a valid building permit with approved plans; 2) usurped the Building Official's authority to approve a Temporary Certificate of Occupancy or Certificate of Occupancy; and 3) engaged in obstructive behavior when Narragansett attempted to comply with his demands, such refusing to accept submissions for frivolous reasons, continuously changing the nature of the demands made upon Narragansett, and refusing to verify the steps necessary to obtain a Certificate of Occupancy.

160. Defendant Powers similarly interfered the Narragansett's ability to obtain a Temporary Certificate of Occupancy or Certificate of Occupancy for the 275 Ferris Avenue premises, in that he revoked his approval of plans.

161. Defendants Rave and Quattrucci acted in violation of law, in that 1) Defendant Quattrucci has failed to fulfill his duty to issue a Certificate of Occupancy to Narragansett in

accordance with law; and 2) Rave has exceeded the scope of his duties and unlawfully interfered with the issuance of a Certificate of Occupancy to Narragansett.

162. At all times pertinent hereto, Defendant Klucznik has acted in concert with and in supervision of Defendant Rave.

163. Immediate and irreparable harm will result if injunctive relief is not granted that would issue Narragansett the Certificate of Occupancy to which it is entitled as a matter of law. Without a Certificate of Occupancy, Narragansett is unable to begin its manufacturing operations. This inability to begin manufacturing is having and will continue to have the following effects:

a. Narragansett has been unable to meet its contractual obligations for some 80,000 tons of wood pellets, for a total of approximately $16,000,000. As a result, Narragansett has lost these contracts.

b. Narragansett's inability to fulfill its contractual obligations for finished products or accept shipments of raw material has damaged its relationships with its vendors and customers alike, and impaired its reputation in the business community in the future. Among other things, Narragansett's ability to obtain additional contracts for its products will be substantially impaired.

c. Without the stream of revenue generated by these contracts for its finished products, Narragansett will be unable to remain in business. Even if Narragansett had sufficient resources to relocate, it is unlikely that it would be able to find a site with amenities similar to those located at 275 Ferris Avenue within the State of Rhode Island that are essential to the operations of its business.

d. Because Narragansett was unable to become fully operational, it missed the winter peak time of demand for its product, and the business opportunities flowing therefrom.

e. Narragansett has already to lay off some 20 of its employees.

f. The Economic Development authorities of City of East Providence and the State of Rhode Island have made substantial investments in Narragansett. If Narragansett is not permitted to operate, these Economic Development authorities will fail to receive the benefit of their investments.

g. The business climate in the City of East Providence and the State of Rhode Island will suffer, in that the pattern of unlawful, obstructive behavior dealt out to Narragansett will discourage other businesses from locating in this jurisdiction.

164. Plaintiff has no adequate remedy at law; there are no alternative administrative or legislative remedies available and Plaintiff cannot have adequate relief except by the intervention of this Court.

165. No danger to the public health or safety would result by the issuance of a Certificate of Occupancy.

WHEREFORE, plaintiffs request judgment as follows:

a. That Building Official Albert Quattrucci be ordered to issue a Certificate of Occupancy for the 275 Ferris Avenue premises forthwith.

b. That Captain David Rave and all other City officials, the State Fire Marshal, and the State Fire Safety Code Board of Review and Appeal cease and desist from interfering with the issuance of a Certificate of Occupancy for the 275 Ferris Avenue premises, or otherwise interfering with the operations of Narragansett.

## COUNT II – DECLARATORY RELIEF

166. Plaintiff realleges those allegations contained in the above Paragraphs as if fully restated therein.

167. Defendants Rave and Powers took the position that Building Permit A31628 is invalid.

168. Defendant Powers unlawfully revoked his previous approval of plans.

169. Defendants Rave and Quattrucci took the position that Defendant Rave, in his capacity as Fire Marshal, has the authority to approve or reject the issuance of Certificates of Occupancy and/or Temporary Certificates of Occupancy.

170. Defendant Rave and Powers took the position that the Plaintiff was not entitled to a Certificate of Occupancy after it had completed the work approved under Building Permit A31628.

171. Said legal positions taken by the Defendants Rave, Powers, and Quattrucci are incorrect.

WHEREFORE, Plaintiff requests that this Honorable Court:

1. Declare that Building Permit A31628 is valid;
2. Declare that Defendant Rave is not entitled to approve or reject the issuance of Certificates of Occupancy and/or Temporary Certificates of Occupancy;
3. Declare that Defendant Rave is not entitled to demand work over and above that which was required by the Building Permit;
4. Declare that Plaintiff is entitled to a Certificate of Occupancy forthwith.

**COUNT III – § 1983**

172. Plaintiff realleges those allegations contained in the above Paragraphs as if fully restated therein.

173. Plaintiff had a property interest in its Building Permit A31628 issued on or about May 23, 2006, and the subsequent issuance of a Certificate of Occupancy once the approved plans were completed.

174. Defendants Wise, Rave, Powers, and Quattrucci deprived Plaintiff of its property interests in violation of its rights to procedural and substantive due process pursuant to Amendment 14 of the U.S. Constitution.

175. At all relevant times, Defendants Wise, Rave, Powers, and Quattrucci acted under color of state law.

176. Defendant City of East Providence (named through its treasurer) and Defendant Klucznik failed to adequately and properly supervise and/or train Defendants Wise and Rave.

177. Defendant City of East Providence (named through its treasurer filed to adequately and properly supervise and/or train Defendant Klucznik.

178. As a direct and proximate result of Defendants' violation of Plaintiff's rights, Plaintiff has suffered pecuniary and non-pecuniary damages, including, but not limited to, delays in beginning business operations, lost business opportunities and profits, and reputational harm as a result of its inability to meet contractual obligations.

WHEREFORE, Plaintiff demands judgment against the Defendants, including compensatory and punitive damages, attorneys' fees and costs.

**COUNT IV– INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE**

179. Plaintiff realleges those allegations contained in the above paragraphs as if fully restated therein.

180. Plaintiff derived economic advantage as a result of the issuance of the Building Permit A31628 issued on or about May 23, 2006 and the expectation of receiving a Certificate of Occupancy upon completion of the approved construction, in that the Plaintiff would be able to begin its business operations.

181. Defendants Rave, Quattrucci, and Powers knew or should have known of the economic advantage derived the issuance of the Building Permit A31628 issued on or about May

23, 2006 and the expectation of receiving a Certificate of Occupancy upon completion of the construction approved therein.

182. Defendants Rave, Quattrucci, and Powers willfully and deliberately interfered with the economic advantage derived from Plaintiff's Building Permit A31628 issued on or about May 23, 2006, and the expectation of receiving a Certificate of Occupancy upon completion of the construction approved therein.

183. Defendants Rave, Quattrucci, and Powers used improper means, and had improper motives in depriving Plaintiff of the economic benefits derived from Plaintiff's Building Permit A31628 issued on or about May 23, 2006 and the expectation of receiving a Certificate of Occupancy upon completion of the construction approved therein.

184. As a direct and proximate result of the illegal activity of Defendants Rave, Quattrucci, and Powers, Plaintiff has suffered great financial loss, including, but not limited to, delays in beginning business operations, lost business opportunities and profits, and reputational harm as a result of its inability to meet contractual obligations.

WHEREFORE, Plaintiff demands judgment against Defendants Rave, Quattrucci, and Powers, including but not limited to compensatory and punitive damages, attorneys' fees and costs.

**COUNT V – INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE**

185. Plaintiff realleges those allegations contained in the above paragraphs as if fully restated therein.

186. Plaintiff derived economic advantage as a result of the Fire Board's November 3, 2006 decision, and the expectation of ultimately receiving a Certificate of Occupancy, in that the Plaintiff would be able to begin its business operations.

187. Defendant Rave and Quattrucci knew or should have known of the economic advantage derived as a result of the Fire Board's November 3, 2006 decision, and the expectation of ultimately receiving a Certificate of Occupancy, in that the Plaintiff would be able to begin its business operations.

188. Defendant Rave and Quattrucci willfully and deliberately interfered with the economic advantage derived from Fire Board's November 3, 2006 decision and the expectation of receiving a Certificate of Occupancy upon completion of the approved construction.

189. Defendants Rave and Quattrucci used improper means, and had improper motives in depriving Plaintiff of the economic benefits derived from Fire Board's November 3, 2006 decision and the expectation of receiving a Certificate of Occupancy upon completion of the approved construction.

190. As a direct and proximate result of the illegal activity of Defendants Rave and Quattrucci, Plaintiff has suffered great financial loss, including, but not limited to, delays in beginning business operations, lost business opportunities and profits, and reputational harm as a result of its inability to meet contractual obligations.

WHEREFORE, Plaintiff demands judgment against Defendants Rave and Quattrucci including but not limited to compensatory and punitive damages, attorneys' fees and costs.

## COUNT VI – INTENTIONAL INTERFERENCE WITH CONTRACTUAL AND ADVANTAGEOUS RELATIONS

191. Plaintiff realleges those allegations contained in the above paragraphs as if fully restated therein.

192. Plaintiff at all times pertinent hereto maintained a contractual relationship with its landlord, 275 Ferris Avenue, LLC

193. Defendants Rave and Quattrucci knew of the contractual relationship between Plaintiff and landlord.

194. Defendant Rave and Quattrucci willfully and deliberately interfered with the contractual relationship between Plaintiff and landlord.

195. Defendant Rave and Quattrucci used improper means, and had improper motives in attempting to deprive Plaintiff of the economic benefits derived from and the expectation of receiving ongoing benefits from its relationship with 275 Ferris Ave., LLC.

196. As a direct and proximate result of the illegal activity of Defendant Rave, Plaintiff has suffered great financial loss, including, but not limited to, delays in beginning business operations, lost business opportunities and profits, and reputational harm.

WHEREFORE, Plaintiff demands judgment against Defendants Rave and Quattrucci, including but not limited to compensatory and punitive damages, attorneys' fees and costs.

**COUNT VII – LENDER LIABILITY**

197. Plaintiff realleges those allegations contained in the above paragraphs as if fully restated therein.

198. At all times pertinent hereto Defendant City of East Providence (named through is treasurer) was a lender to Plaintiff for the purpose of economic development.

199. As a lender, Defendant incurred certain duties and requirements of conduct regarding Plaintiff.

200. Defendant did, by its actions through other Defendants named herein and other persons not named herein, breach the duty owed to Plaintiff.

201. Such breach consists of interference with the operations of Plaintiff without legal justification.

202. As a result of such breach Plaintiff has suffered monetary harm.

203. The conduct of Defendant City, through its officers, employees and agents, is the direct and proximate cause of such monetary harm.

WHEREFORE, Plaintiff demands judgment against Defendant, including but not limited to compensatory and punitive damages, attorneys' fees and costs.

**COUNT VIII – CIVIL CONSPIRACY**

204. Plaintiff realleges those allegations contained in the above Paragraphs as if fully restated therein.

205. Defendant Fire Marshal Curtis Wise did engage in civil conspiracy for the purpose of violation of the Rhode Island Code of Ethics, R.I. Gen. Laws § 36-14-5(a) which prohibits any "...business, employment, transaction or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest..."

206. The conduct of Defendant Wise in making a business referral to Dana Newbrook, who exercises public regulatory jurisdiction over Defendant Wise, constitutes violation of the Rhode Island Code of Ethics.

207. As a direct and proximate result of the conspiratorial conduct of Defendant Wise, Plaintiff suffered damages, including, but not limited to, delays in beginning business operations, lost business opportunities and profits, reputational harm as a result of its inability to meet contractual obligations.

WHEREFORE, the Plaintiff demands judgment against the Defendant Wise, including compensatory and punitive damages, attorneys' fees and costs.

**COUNT IX – CIVIL CONSPIRACY**

208. . Plaintiff realleges those allegations contained in the above Paragraphs as if fully restated therein.

209. Defendant Rave did engage in civil conspiracy with Defendant Burlingame, through his employer, for the purpose of violation of the Rhode Island Code of Ethics, R.I. Gen. Laws § 36-14-5(a) which prohibits any "...business, employment, transaction or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest..."

210. The conduct of Defendant Rave in making a business referral to Defendant Burlingame, who exercises public regulatory jurisdiction over Defendant Rave, constitutes violation of the Rhode Island Code of Ethics.

211. As a direct and proximate result of the conspiratorial conduct of Defendant, Plaintiff suffered damages, including, but not limited to, including, but not limited to, delays in beginning business operations, lost business opportunities and profits, reputational harm as a result of its inability to meet contractual obligations.

WHEREFORE, the Plaintiff demands judgment against the Defendant Rave, including compensatory and punitive damages, attorneys' fees and costs.

**COUNT X – CIVIL CONSPIRACY**

212. Plaintiff realleges those allegations contained in the above Paragraphs as if fully restated therein.

213. Defendants Rave, Quattrucci, Wise, and Powers did engage in civil conspiracy for the purposes of wrongfully denying Plaintiff their interests in their certificate of occupancy and/or temporary certificates of occupancy.

214. Defendants Rave, Quattrucci, Wise, and Powers did engage in civil conspiracy for the purposes of wrongfully interfering with the Plaintiff's economic interests.

215. As a direct and proximate result of the conspiratorial conduct of Defendants Rave, Quattrucci, Wise, and Powers Plaintiff suffered damages, including, but not limited to, including, but not limited to, delays in beginning business operations, lost business opportunities and profits, reputational harm as a result of its inability to meet contractual obligations.

WHEREFORE, the Plaintiff demands judgment against the defendant, including compensatory and punitive damages, attorneys' fees and costs.

**COUNT XI – ESTOPPEL**

216. Plaintiff realleges those allegations contained in the above Paragraphs as if fully restated therein.

217. The Defendants, City of East Providence, Quattrucci, and Wise through their issuance and approval of Building Permit A31628, had impliedly promised the Plaintiff that it would be issued a Certificate of Occupancy and be permitted to commence operations if it were to complete the building plans approved with the issuance of said permit.

218. The issuance and approval of Building Permit A31628 by Defendants City of East Providence, Quattrucci, and Wise induced substantial action on the part of the Plaintiff.

219. Plaintiff justifiably and reasonably relied upon the implied promise of Defendants City of East Providence, Quattrucci, and Wise the issuance of a Certificate of Occupancy and commencement of operations.

220. Plaintiff was in fact induced to take substantial action in reliance upon the promise of the issuance of a Certificate of Occupancy and commencement of operations, but did not receive a Certificate of Occupancy.

221. As a result of Plaintiff's reliance upon Defendants' promise of the issuance of a Certificate of Occupancy and commencement of operations, it has suffered monetary damages.

222. Injustice and inequity would result if the Defendants' promises are not enforced.

WHEREFORE, Plaintiff prays that this Honorable Court grant it damages, as well as costs, attorneys' fees, and any other relief that this Honorable Court deems appropriate.

Narragansett Pellet Corp.
By its attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
March 14, 2006

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903
(401) 331-6565
(fax) 331-7888
March 14, 2006

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

/s/ Vicki J. Bejma

STATE OF RHODE ISLAND
Providence, SC.

I, William S. Carden, President, Narragansett Pellet Corporation, depose and say that I have read the foregoing complaint and know the contents thereof and that the facts alleged therein are true and correct as to my own knowledge except as to those matters alleged on information and belief and to those matters said complaint is true to the best of my knowledge and belief.

William S. Carden

Subscribed and sworn to before me this 15th day of March, 2007.

NOTARY PUBLIC
My commission expires:
2/2/01

**CERTIFICATION**

I, the undersigned, hereby certify that on 3/15/07 I sent a true copy of the within by electronic service and/or fax and mail to all of the parties below:

Timothy Chapman, Esq.
Office of the City Solicitor
City Hall
145 Taunton Avenue
East Providence, RI 02914

James Lee, Esq.
Department of the Attorney General
150 South Main Street
Providence, RI 02903

Marc DeSisto, Esq.
2 Angell Street
P.O. Box 2563
Providence, RI 02906

/s/ Vicki J. Bejma