UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NARRAGANSETT PELLET CORP.,

*Plaintiff,*

vs. C.A. No. 06-464ML

CITY OF EAST PROVIDENCE, through its Treasurer, KEVIN FITZGERALD, et al.,

*Defendants.*

**DEFENDANTS'[1] MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The claims contained in Plaintiff's Second Amended Complaint ("Plaintiff's Complaint") stem from a dispute between Plaintiff and the City of East Providence over the issuance of a certificate of occupancy for Plaintiff's manufacturing facility. The City contends that Plaintiff must comply with the applicable provisions of the Rhode Island Fire and Life Safety Codes before it can issue the Certificate. Plaintiff disagrees, contending that it need only comply with the Rhode Island Building Code for the Certificate to issue from the City. This impasse led to the filing of the instant lawsuit. Plaintiff claims damages pursuant to 42 U.S.C. § 1983 for alleged violations of its procedural and substantive due process rights and also seeks damages based on various state law claims. Defendants contend that, based on the undisputed facts of this case, they are entitled to judgment in their favor as a matter of law.

[1] City of East Providence, through its Treasurer, Kevin Fitzgerald, Albert Quattrucci, Joseph Klucznik, David Rave, Curtis Wise, and Robert Powers.

## II. FACTS AND TRAVEL

On or about April 10, 2006, the East Providence Fire Department ("EPFD") received a building permit application together with a plan review application and construction plans for a portion of property located at 275 Ferris Avenue ("Property"). *See attached Exhibit A, April Building Permit Application, and Exhibit B, April Plan Review Application.* The applications were the beginning steps in the process to "fit-up" or perform renovations to the Property for its use by Plaintiff to manufacture wood pellets. The Property is owned by Ferris Avenue Realty, L.L.C. On May 8, 2006, a meeting was held between representatives of Plaintiff, including its president, William Carden ("Carden") and EPFD Captain Curtis Wise ("Wise") and EPFD Fire Alarm Inspector Robert Powers ("Powers") to discuss Plaintiff's proposed use of the Property.

On May 23, 2006, the EPFD received a second building permit application and plan review application and construction plans for the Property. *See attached Exhibit C, May Building Permit Application, and Exhibit D, May Plan Review Application.* The May building permit application was also filed with the East Providence Building Inspector's Office. On May 23, 2006, the Building Inspector's Office issued a building permit for the Property. *See attached Exhibit E, Building Permit A31628.* However, the EPFD did not approve either the April or May plan review applications for the Property, nor did it sign off its approval on the April or May building permit applications.

On August 1, 2006, Powers with representatives of Plaintiff, including Carden, to address fire alarm issues. EPFD Captain David Rave ("Rave"), who was appointed EPFD Fire Marshal on July 24, 2006, accompanied Powers. Rave became aware, after his recent appointment, that Plaintiff had filed the April and May plan review applications and that the EPFD had not approved these Applications. At the meeting, Rave observed that Plaintiff had performed work

on the Property that was not approved by the EPFD. Rave informed Carden that the EPFD had not approved Plaintiff's plan review applications nor its construction plans for the work being performed on the Property.

Rave then set about to review the Plaintiff's applications and plans on file with the EPFD. He also sought additional information from Plaintiff, including details of the dust collection system, pellet manufacturing process and required fire suppression systems including explosion protection. On August 7, 2006, Rave presented Plaintiff with a list identifying fire and life safety code deficiencies in the plans and specifications. Rave also presented Plaintiff with a letter that set forth Plaintiff's right to appeal his decision to the State Fire Safety Board of Appeal and Review ("Fire Safety Board"). *See attached* *Exhibit F*, *Letter from Rave to Plaintiff, dated August 7, 2006, including Deficiency List.*

Plaintiff did not agree with the deficiency list and the high hazard designation of a portion of the Property. Rave suggested an independent third-party review of Plaintiff's operation as allowed by the Rhode Island Fire Safety Code at the August 7, 2006 meeting.[2] Among other things, the third-party review provides in-depth technical assistance to the Fire Marshal on complicated fire code compliance issues. Rave selected Hughes Associates, Inc. to conduct the third-party review. Plaintiff submitted new plans and specifications to the EPFD on or about August 16, 2006. On August 23, 2006, Hughes Associates, Inc. issued a 15-page report to Plaintiff affirming the high hazard designation and other fire protection and life safety code deficiencies. Rave completed his review of the August 16, 2006 plans submitted by Plaintiff, rejected them, and issued another fire code deficiency list to Plaintiff on September 6, 2006.

[2] NFPA 1 § 1.15.1 states that the Authority Having Jurisdiction shall be permitted to require a review by an independent third party with expertise in the matter to be reviewed at the submitter's expense.

On September 11, 2006, meeting was held at the Property to discuss the fire code deficiency report and the third-party plan review. The participants included Rave, other members of the EPFD, representatives from the State Fire Marshal's Office, Hughes Associates, Inc., the owner of the Property and Plaintiff, its fire protection engineers, attorney and architects. Plaintiff requested a one-day temporary certificate of occupancy to hold an open house on September 16, 2006. Rave wrote to the Rhode Island State Fire Marshal requesting permission to approve the one-day temporary certificate of occupancy ("TCO"). The request was approved by Rhode Island State Fire Marshal.

On September 15, 2006, Rave received an unsigned letter from Plaintiff. In the letter, Plaintiff agreed to conform to and complete the fire code deficiency list no later than March 31, 2007. *See attached Exhibit G, Letter from Plaintiff to Rave, dated September 15, 2006.* Plaintiff continued to request a temporary certificate of occupancy from the Building Inspector's Office. On September 27, 2007, Rave wrote to Carden outlining the EPFD history with Plaintiff's project. Rave further stated that, in order for a temporary certificate of occupancy to issue, "the fire protection and life safety features required of an occupancy must be operational and at a level that the AHJ [Authority Having Jurisdiction] finds acceptable." The letter contained a list of items necessary to comply with the applicable fire and life safety codes to obtain the temporary certificate of occupancy. *See attached Exhibit H, Letter from Rave to Plaintiff, dated September 27, 2007.*

On October 11, 2006, the EPFD responded to a fire alarm at the Property. A fire had occurred in the grinding machine. Plaintiff's employees used several portable fire extinguishers and a water hose attached to the Property's sprinkler system to put out the fire. Although no call was placed to the EPFD to report the fire, the use of the water hose triggered the building's fire

alarm system. Plaintiff's employees claimed that they were testing the grinder machine. On October 11, 2006, the building inspector and the EPFD issued Cease and Desist Stop Work Orders to the Property owner.

The instant lawsuit was filed in the Providence County Superior Court on or about October 16, 2006. The lawsuit was removed to this Court on October 23, 2006. According to the civil docket, a hearing was held the following day on Plaintiff's Motion for a Temporary Restraining Order. The motion was withdrawn by Plaintiff. On October 26, 2006, Plaintiff filed an appeal to the Fire Safety Board seeking variances from certain deficiencies and rulings made by Rave. On November 3, 2006, the Fire Safety Board issued a 14-page, written decision granting a variance to allow the EPFD Fire Marshal's Office to approve the East Providence Building Official's discretionary issuance of a series of proposed temporary certificates of occupancy in accordance with certain timetables and conditions contained in the decision. *See attached <u>Exhibit I</u>, Board's Decision, dated November 3, 2006.* Activity, in the form of hearings and discussions, continue between Plaintiff, the EPFD, the Rhode Island State Fire Marshal's Office and the Board on fire and life safety code compliance with the Property. On April 9, 2007, the State Fire Marshal authorized the Rave to issue a temporary certificate of occupancy until June 30, 2007. *See attached <u>Exhibit J</u>, Letter from Fire Marshal to Plaintiff, dated April 9, 2007.* As the letter states, once all fire code related issues are resolved to the satisfaction of the EPFD, a final certificate of occupancy may be issued to Plaintiff.

## III. STANDARD OF REVIEW

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the [Civil] Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *<u>Celotex Corp. v. Catrett</u>,*

*477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986) (internal quotations and citations omitted)*. Summary judgment is lawful and proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. In addition, "[s]ummary judgment is appropriate against a party who, after a sufficient time for discovery, 'fails to make a showing sufficient to establish the existence of a single element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Torraco v. Maloney, 923 F.2d 231, 232 (1st Cir. 1991) quoting Celotex Corp., 477 U.S. at 322, 106 S.Ct. at 2552.* Further,

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party ***may not rest upon the mere allegations or denials of the adverse party's pleading***, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. *Fed. R. Civ. P. 56(e) (emphasis added)*.

Based upon the foregoing, the United States Supreme Court observed that the above two sentences of Rule 56(e) were added "to disapprove a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its pleadings." *Celotex Corp, 477 U.S. at 325, 106 S.Ct. at 2554*. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. at 2514 (1986).*

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party ***for a jury to return a verdict for that party***." *Id. at 249, 106 S.Ct. at 2511 (emphasis added)*. "***If the evidence is merely colorable, or is not significantly probative, summary***

***judgment may be granted***." Id. *at 249-50, 106 S.Ct. at 2511 (emphasis added)*. As the Court recognized:

> [n]or are judges any longer required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party. Formerly it was held that if there was what is called a scintilla of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether where is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. *Id. at 251, 106 S.Ct at 2511 (emphases in original).*

Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be ***insufficient***; there must be evidence on which the jury could reasonably find for the plaintiff." *Id. at 252, 106 S.Ct. at 2512 (emphasis added).*

## IV. ARGUMENT

### A. Procedural and Substantive Due Process under 42 U.S.C. § 1983

Plaintiff's procedural and substantive due process claims must fail because it did receive adequate process and, further, it does not have a property interest in the certificate of occupancy it seeks. Moreover, Defendants are protected by qualified immunity in this matter.

Count III of Plaintiff's Complaint contains its claims of § 1983 constitutional violations. In Count III, Plaintiff contends that Defendants Wise, Rave, Powers and Quattrucci deprived it of its property interests in violation of its rights to procedural and substantive due process. *Plaintiff's Complaint, at ¶174*. The property interest, according to Plaintiff is "in its Building Permit A31628 issued on or about May 23, 2006, and the subsequent issuance of a certificate of occupancy once the approved plans were completed." *Id. at ¶173*. Plaintiff also asserts a derivative claim: that the Defendant City failed to adequately supervise and/or train Defendants

Wise, Rave and Klucznik and that Defendant Klucznik failed to adequately supervise and/or train Defendants Wise and Rave. *Id. at* ¶¶ *176 and 177.*

In order to establish a procedural due process claim against the named Defendants, Plaintiff must prove two elements. First, Plaintiff must show that it had a property interest as defined by state law. Second, Plaintiff must show that the Defendants, acting under color of state law, deprived it of that interest without adequate process. *SFW Arecibo, Ltd. v. Rodriguez, 415 F. 3d 135, 139 (1st Cir. 2005); PFZ Prop., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991)*. Plaintiff cannot satisfy either of these elements.

The United States Constitution does not define what constitutes a constitutionally protected "property interest." "Rather, [property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law*." Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161; 101 S.Ct. 446, 451 (1980) quoting Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2709 (1972)*. Someone seeking to establish a property interest must clearly have more than an abstract need or desire for it. There must be more than a unilateral expectation of it. Instead, there must be a legitimate claim of entitlement to it. *Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002)*. The property interest Plaintiff claims in the instant case is stated rather uniquely. According to Plaintiff, it "***had*** a property interest in its Building Permit A31628 issued on or about May 23, 2006, and the subsequent issuance of a certificate of occupancy once the approved plans were completed." *Plaintiff's Complaint, Count III, at* ¶*173 (emphasis added)*. Plaintiff contends that Defendants Wise, Rave, Powers and Quattrucci deprived it of these property interests. *Id. at* ¶*174.*

Defendant Albert Quattrucci ("Quattrucci") is the East Providence Building Official. Defendants Wise, Rave and Powers are members of the EPFD and are, or were, responsible for enforcement of the Rhode Island Fire Safety Code, R.I. GEN. LAWS § 23-28-1 et seq. ("Fire Safety Code"). A certificate of occupancy has not been issued to Plaintiff because it has not complied with the provisions of the Fire Safety Code. Plaintiff does not dispute its non-compliance with the Fire Safety Code. Instead, Plaintiff argues that the Fire Safety Code plays no role whatsoever in the issuance of its certificate of occupancy. According to Plaintiff, it is entitled to a certificate of occupancy because it has "completed the construction plans approved with the issuance of Building Permit A31628." *Plaintiff's Complaint, at ¶153*. Plaintiff has misread the State Building Code and the requirements necessary to obtain a certificate of occupancy.

As Plaintiff states in its Complaint, the provisions for certificates of use and occupancy are set forth in R.I. GEN. LAWS § 23-27.3-120 et seq. of the Rhode Island State Building Code, which states, in pertinent part, that

> No building or structure subsequently enlarged, extended, or altered * * * in whole or in part, shall be occupied or used until the certificate has been issued by the building official, certifying that the work has been completed in accordance with the provisions of this code, ***the rehabilitation building and fire code*** for existing buildings and structures, ***the fire safety code (chapters 28.1 – 28.39 of this title)*** and the approved permits, and ***all of the applicable codes*** of all for which a permit is required. *R.I. GEN. LAWS § 23-27.3-120.2 (emphasis added).*

The plain and ordinary meaning of this statute clearly requires that the completed work comply with the Fire Safety Code before a building official issues a certificate of occupancy. Here, it is undisputed that Plaintiff has not complied with the Fire Safety Code. As such, Defendant Quattrucci cannot issue the certificate of occupancy. The other statutes cited by Plaintiff in its Complaint offer further support for Fire Safety Code compliance before a certificate of

occupancy can be issued by the building official. R.I. GEN. LAWS § 23-27.3-120.3 states that "the building official shall issue a certificate of use and occupancy, provided there are no violations of law or orders of the building official ***or fire official pending*** * * * " *(emphasis added)*.

In the instant case, it is undisputed that violations of law or orders of the fire officials, i.e., the list of Fire Safety Code deficiencies from the EPFD Fire Marshal's office, are pending against the Property. Similarly, R.I. GEN. LAWS § 23-27.3-120.6, the last statute cited by Plaintiff, states that a certificate of occupancy shall issue "provided the provisions of the approved permits and of the ***applicable codes for which permits are required*** have been met" *(emphasis added)*. Clearly, the Fire Safety Code is an applicable code for which permits are required and it is undisputed that Plaintiff has not complied with the Fire Safety Code.

Plaintiff contends that the statutes governing the issuance of Certificates of Occupancy do not give the Fire Marshal authority to reject these requests, that that authority is reserved to the building official who, in this case, has not determined that any violations of the Code exist. *Plaintiff's Complaint, at ¶¶ 156 and 157*. However, as stated *supra*, issuance of a certificate of occupancy is contingent not only on compliance with the Building Code but with the Fire Safety Code. Here, it is undisputed that Plaintiff has not complied with the Fire Safety Code and who better to ascertain non-compliance but the Fire Marshal who is charged with Fire Safety Code enforcement. The Fire Marshal did not reject Plaintiff's certificate of occupancy; he merely reported to the building official (and Plaintiff) the areas of the non-compliance with the Fire Safety Code. Since the statutes governing the issuance of Certificates of Occupancy clearly require that the work comply with the Fire Safety Code, Quattrucci could not issue the certificate of occupancy to Plaintiff.

Plaintiff was well aware that it needed to comply with the Fire Safety Code in order to obtain a certificate of occupancy. On or about April 10, 2006, Plaintiff submitted a building permit application together with a plan review application to the EPFD. *See Exhibits A and B, respectively*. The purpose of this submittal was to comply with R.I. GEN. LAWS § 23-27.3-113.5, which requires that building permit plans and specifications have prior approval in accordance with the Fire Safety Code. A second building permit application and plan review application were filed by Plaintiff with the EPFD on May 23, 2006. Obviously, Plaintiff was aware that it needed to comply with the Fire Safety Code in order to use and occupy the Property, otherwise it would not have filed these applications.

Defendants have not revoked or rescinded Building Permit A31628. Quattrucci has not and ***cannot*** issue a certificate of occupancy unless and until Plaintiff's work complies with the Fire Safety Code. Plaintiff does not have a claim of entitlement to the certificate of occupancy and, therefore, does not have a property interest in it, and cannot establish the first element of its procedural due process claim against Defendants Wise, Rave, Powers and Quattrucci.

Even if Plaintiff was able to show a constitutionally protected property interest, it cannot establish the second element of the procedural due process standard. The second element requires that Defendants, acting under color of state law, deprived Plaintiff of a property interest without adequate process. *See SFW Arecibo, Ltd. v. Rodriguez, 415 F. 3d at 139.* In addressing this second element, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry should examine the procedural safeguards built into the statutory or administrative procedure * * * effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch, 494 U.S. 113, 126 (1990)*.

Defendants can only assume that Plaintiff's procedural due process claim is based on the lack of a pre-deprivation hearing. A hearing was not held by Quattrucci prior to his refusal to issue the occupancy certificate requested by Plaintiff. However, it is well-settled that the lack of a pre-deprivation hearing does not, in and of itself, constitute a procedural due process violation. Instead, the Court must examine "the procedural safeguards built into the statutory or administrative procedure * * * effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Id*. The procedural safeguards in the instant case were the post-deprivation appellate procedures available to Plaintiff. *See also, PFZ Properties, Inc., 928 F2d at 31 ("When a deprivation of property results from conduct of state officials violative of the state law, the Supreme Court has held that failure to provide pre-deprivation process does not violate the Due Process Clause."); Amsden v. Moran, 904 F.2d 748, 755 (1st Cir. 1990) ("The availability of judicial review is an especially salient consideration in situations where permits and licenses have been denied or revoked by state or local authorities in alleged derogation of procedural due process."); SFW Arecibo, Ltd., 415 F.3d at 139 ("[o]ur focus is on the availability of post-deprivation, rather than pre-deprivation, process . . ."); Licari v. Ferruzzi, 22 F.3d 344, 348 (1st Cir. 1994) ("There is further reason why the revocation of the building permits did not violate Colonial's right to procedural due process: post-deprivation remedies were available.")*

In the instant case, the post-deprivation remedies were more than adequate to satisfy procedural due process. Plaintiff had two (2) options after Quattrucci refused to issue the certificate of occupancy because of the Fire Safety Code violations. One option was to file an administrative appeal of Quattrucci's decision to the East Providence Zoning Board of Review. Section 19-38(a) of the East Providence Ordinances grants the zoning board of review the power

to hear and decide appeals from any order, requirement, decision or determination made by an administrative officer. *See also, R.I. GEN. LAWS § 23-27.3-127.2.3 ("The local board of appeals may vary the application of any provision of this code * * *"); R.I. GEN. LAWS § 23-27.3-127.1.2 ("The board of standards and appeals may vary the application of any provision of this code * * *"); East Providence Ordinances § 19-38(b) ("An aggrieved party may appeal a decision of the zoning board of review to the superior court * * *").* The second option was to file an appeal to Fire Safety Board, as Rave stated in his letter advising Plaintiff of the Fire Safety Code violations. *See Exhibit F.*

Initially, Plaintiff did neither. However, after filing the instant lawsuit and after a conference with the Court, Plaintiff did file an appeal to the Fire Safety Code Board of Appeal and Review. The appeal sought, among other things, variances from some of the Fire Safety Code violations cited by Defendant Rave. The Board issued a decision (*see Exhibit H*) approving a TCO and stating a process for obtaining a final certificate. Ongoing discussions and hearings between Plaintiff and the Board, on Fire Safety Code issues, continue to the present. As a matter of law, these post-deprivation administrative processes, one of which was eventually used by Plaintiff, satisfy procedural due process. Plaintiff cannot establish the second element of the procedural due process standard as it received constitutionally adequate procedural due process.

Plaintiff's substantive due process claim must flow from the same decisions of Defendants relating to the certificate of occupancy. Once again, the first hurdle Plaintiff must overcome is the establishment of a property interest as defined by state law. *See Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002) ("To establish a due process claim, substantive or procedural, appellants must first establish a property interest.")* Defendants contend, for the

reasons set forth *supra*, that Plaintiff cannot establish a property interest thereby condemning its substantive due process claim. Even if Plaintiff could overcome this hurdle, its substantive due process claim would still fail as the second hurdle is even higher than the first one.

"A viable substantive due process claim requires proof that the state action was 'in and of itself . . . egregiously unacceptable, outrageous, or conscious-shocking.'" *Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994) quoting Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).* Further, as the First Circuit has on many occasions stated,

> [R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interest. *PFZ Properties, Inc., 928 F.2d at 31-32. (internal citations and quotations marks omitted).*

The standard necessary to establish abuse of government power is a high one. *Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F. 2d 32, 45 (1st Cir. 1992).* The reason for this high standard is the difficulty in deciding what abuses constitute abuses of substantive due process. *Id*. Although not alleged by Plaintiff, "even bad-faith violations of state law are not necessarily tantamount to unconstitutional deprivations." *Amsden, 904 F.2d at 757. See also, PFZ Properties, 927 F.2d at 32 ("Even assuming that ARPE engaged in delaying tactics and refused to issue permits for the Vacia Talega project based on considerations outside the scope of its jurisdiction under Puerto Rico law, such practices, without more, do not rise to the level of violations of the federal constitution under a substantive due process label.")* The Court has, however, "left the door slightly ajar for federal relief in truly horrendous situations. *Id.*

There was nothing egregiously unacceptable, outrageous, or conscious-shocking about Defendants' actions in the instant case. In fact, if there was any conscious-shocking behavior, it was by Plaintiff. The ironic aspect of this case is that Plaintiff does not dispute non-compliance with the Fire Safety Code. It simply argues that the Fire Safety Code has nothing to do with the issuance of a certificate of occupancy. Frankly, for the reasons set forth *supra*, such an argument may itself be considered conscious-shocking. However, it is not conscious-shocking for Defendant Quattrucci to read R.I. GEN. LAWS § 23-27.3-120 et seq. to require compliance with the Fire Safety Code. In fact, it might be considered conscious-shocking if he read it otherwise. Even if Plaintiff could show that the decisions of the Defendants were erroneous or in excess of their authority, it would not be enough to establish a substantive due process violation. Decisions made for erroneous reasons, or made beyond authority, do not rise to the level of a constitutional violation. *See Amsden, 904 F.2d at 757 ("Our cases make clear that a regulatory board does not transgress constitutional due process requirements merely by making decisions for erroneous reasons or by making demands which arguably exceed its authority under the relevant state statutes.") (internal quotations and citation omitted).*

In *Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1982)*, the defendant town disapproved a housing development plan proposed by the plaintiff developer. A lawsuit followed wherein Plaintiff alleged, among other things, § 1983 due process violations. The court stated that it would assume that the plaintiff developer could have established at trial that the town used adversarial and even arbitrary tactics to deny the development plan. However, the court noted that plaintiff's claim was too typical of the run of the mill dispute between a developer and a town planning agency to rise to the level of a due process violation. *Id. at 833*. As the court stated, a "conventional planning dispute—at least when not tainted with

fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even where planning officials clearly violate, much less "distort" the state scheme under which they operate." Id. The allegations in the instant case do not even rise to the level of the allegations in the *Creative Environment* case. Plaintiff does not allege fundamental procedural irregularity, racial animus or the like.

The First Circuit standard is clear: "[i]n the substantive due process context, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." *Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).* "Where a license or permit denial [or revocation] is involved, the class of cases which meets the constitutional threshold is narrowly limited." *Collins v. Nuzzo, 244 F.3d 246, 250-251 (1st Cir. 2001).* In fact, such a violation has been found to occur only in a "truly horrendous situation." *Nestor Colon Medina, 964 F.2d at 45.* The standard is "unforgiving" and "guards against insinuating the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals." Id. *(internal quotations and citations omitted).*

Substantive due process protection is not triggered by merely unsound or erroneous government decisions. *Rivera v. Fagundo, 310 F. Supp. 2d 428, 435 (D.P.R. 2004).* Rather, "[i]ts use is limited to those specific instances involving egregious abuse of governmental power which the courts find shocking." *Id. citing Collins v. City of Harker Heights, 503 U.S. 115 (1992).*[3] In *Co. of Sacramento v. Lewis, 523 U.S. 833 (1998)*, the United States Supreme Court

[3] The First Circuit has actually rejected substantive due process claims premised on malicious official action as well as local licensing authority's outright violation of state law. *Amsden, 904 F.2d at 757; Roy v. City of Augusta, 712 F.2d 1517, 1523 (1st Cir. 1983); Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1981). See also Collins, 244 F.3d at 246.*

"clarified the law of substantive due process and made pellucid that conscience-shocking conduct is an ***indispensable element*** of a substantive due process challenge to executive action." *DePoutot v. Raffaelly, 424 F.3d 112, 118 n.4 (1st Cir. 2005) (emphasis added) citing Lewis, 523 U.S. at 846-47 and Hawkins v. Freeman, 195 F.3d 732, 738-39 (4th Cir. 1999) (en banc) (underscoring the "shock the conscience" prerequisite in executive action cases*). Defendants submit that even taking the allegations in the Complaint in the light most favorable to Plaintiff, the allegations fail to rise to the level of a "truly horrendous situation" that shocks the conscience in manner that violates substantive due process guarantees. *See i.e. Blain v. Twp. of Radnor, 167 Fed. Appx. 330 (3d Cir. 2006) (frivolous or non-meritorious appeal, condemnation threat, conflict of interest, and improper denial of a subdivision plan did not rise to the level of impropriety needed to "shock the conscience."); Thornbury Nobel, Ltd. v. Thornbury Township, 2003 U.S. Dist. LEXIS 25985, (October 22, 2004) (holding that in the land use environment, favoring one development over another for the purpose of preserving open space in the township does not shock the conscience or give rise to substantive due process claim).*

Defendants are also protected by the doctrine of qualified immunity. The doctrine of qualified immunity emanates from the Supreme Court's pronouncements in *Harlow* where the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald 457 U.S. 800, 818 (1982).* The purpose behind granting officials such immunity is to allow them to perform their duties and act in areas where clearly established rights are not implicated "with independence and without fear of consequence." *Id. at 819.* Officials, therefore, enjoy "an immunity from suit rather than a mere defense to liability [which] . . . is

effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, *472 U.S. 511, 526 (1985).* Moreover, "[q]ualified immunity may exist even though in hindsight a court might determine that the action of the official violated the constitution." Berthiaume v. Caron, *142 F.3d 12, 15 (1st Cir. 1998) citing* Harlow, *457 U.S. at 814-15.*

In assessing the merits of the defense of qualified immunity, courts consider: (1) whether the facts alleged make out a constitutional violation; (2) whether that law was clearly established; and (3) whether a similarly situated reasonable official would have understood that her conduct violated clearly established law. Savard v. Rhode Island, *338 F.3d 23, 27 (1st Cir. 2003).* "The inquiry whether the right at issue was clearly established properly focuses not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Singer v. Maine, *49 F.3d 837, 845 (1st Cir. 1995).*

In the instant case, even if Plaintiff had a property interest in the certificate of occupancy, it was certainly not clearly established that Plaintiff was entitled to a pre-deprivation hearing and/or that the post-deprivation remedies were inadequate. In fact, the opposite is true, as the procedures followed by the Defendants constitute the norm in these instances. Defendants followed the well-established statutory scheme and Plaintiff was afforded post-deprivation remedies. Therefore, Defendants are entitled to qualified immunity on Plaintiff's procedural and substantive due process claims.

Plaintiff's last claim in Count III is that the City failed to adequately and properly supervise and/or train the Defendants Wise and Rave and Klucznik and that Defendant Klucznik failed to train Defendants Wise and Rave. *Plaintiff's Complaint,* ¶¶ *176 and 177.* Without elaborating on the further requirements for supervisor liability, a municipality or its supervisors cannot be held liable for the failure to supervise resulting in a constitutional injury if no such

constitutional injury has occurred. See City of Los Angeles vs. Heller, *475 U.S. 796, 799 (1986) ("if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Evans vs. Avery, 100 F.3d 1033, 1039-40 (1st Cir. 1996) (where individual officers did not violate plaintiffs' constitutional rights in the course of a high speed pursuit, the City likewise could not be held liable for the alleged failure to monitor police pursuits and through its failure to supervise police officers involved in such pursuits).* As argued *supra*, Plaintiff cannot establish the elements necessary to prove their constitutional claims so this derivative claim must likewise fail.

For all these reasons, including the lack of a property interest, adequate post-deprivation remedies and qualified immunity, Defendants respectfully request that this Court enter summary judgment in their behalf on Count III of Plaintiff's Complaint.

**B. Interference with Economic Advantage Claims**

Counts IV, V and VI of Plaintiff's Complaint espouse claims of intentional interference with Plaintiff's economic advantage. In Count IV, Plaintiff claims that it derived economic advantage from the issuance of the Building Permit and the expectation of receiving a certificate of occupancy upon completion of the "approved" construction. *Plaintiff's Complaint, at ¶180.* The economic advantage is identified as the ability of Plaintiff to begin its business operations. Id. Plaintiff alleges that Rave, Quattrucci and Powers willfully and deliberately interfered with its expected economic advantage, utilizing improper means and motives, by, presumably, not issuing the Temporary or final certificate of occupancy. *Id. at ¶¶ 182-183.*

The elements Plaintiff must prove to establish interference with prospective contractual relations are: (1) the existence of a business relationship or expectancy, (2) knowledge by the

interferor of the relationship or expectancy, (3) an intentional act of interference, (4) proof that the interference caused the harm sustained and (5) damages to the plaintiff. *Mesolella v. City of Providence, 508 A.2d 661, 669 (R.I. 1986).*[4] Further, as Plaintiff has alleged intentional interference, it must show legal malice, i.e., an intent to do harm without justification. *Belliveau Building Corp. v. O'Coin, 763 A2d. 622, 627 (R.I. 2000)*. Plaintiff cannot satisfy the elements necessary to prove intentional interference with economic advantage.

To begin with, there has been no interference with the building permit. It has not been revoked or rescinded by Quattrucci. The interference, so-called, has been with the temporary and/or final certificate of occupancy. However, Rave, Quattrucci and Wise have not interfered with the issuance of the certificate of occupancy in the manner necessary to state a claim for intentional interference with economic advantage. This claim requires intentional wrongful conduct. Here, Quattrucci cannot lawfully issue either a temporary or final certificate of occupancy because the construction work does not comply with the Building Code and Fire Safety Codes. He is bound by R.I. GEN. LAWS § 23-27.3-120.2, which states, in pertinent part, that

> No building or structure subsequently enlarged, extended, or altered * * * in whole or in part, shall be occupied or used until the certificate has been issued by the building official, certifying that the work has been completed in accordance with the provisions of this code***, the rehabilitation building and fire code*** for existing buildings and structures, ***the fire safety code (chapters 28.1 – 28.39 of this title)*** and the approved permits, and ***all of the applicable codes*** of all for which a permit is required. *R.I. GEN. LAWS § 23-27.3-120.2 (emphasis added).*

It is undisputed that Plaintiff has not complied with the Fire Safety Code. Defendants Quattrucci, Wise and Rave have not interfered with the issuance of the temporary and final certificates of occupancy; they have simply followed the dictates of the Building and Fire Safety

[4] This tort is known as interference with prospective economic advantage. These elements are identical to those required to state a claim based on tortious interference with contractual relations, except for the requirement in the latter that an actual contract exist. *Mesolella v. Providence, 508 A.2d 661, 669-670 (R.I. 1986)*

Codes. It would be another matter if Plaintiff had complied with the requirements of the Fire Safety Code, but that is not the case here. There has been no intentional interference with Plaintiff's economic advantage, aside from Plaintiff standing in its own way.

Count V continues with this theme. Plaintiffs allege that Defendants Rave and Quattrucci willfully and deliberately interfered with Plaintiff's economic advantage derived from the Fire Board's November 3, 2006 Decision ("Decision", attached hereto as *Exhibit H*). *Plaintiff's Complaint, ¶188.* The Decision recites a series of steps that Plaintiff must follow in order to obtain a TCO and, eventually, a final certificate of occupancy. Plaintiff does not elaborate on how exactly Rave and Quattrucci wrongfully interfered with the Decision. In fact, a TCO was issued to Plaintiff in accordance with the Decision. This claim must be denied for the same reasons set forth above; whether Plaintiff moves from one phase to the next—and obtains its temporary and permanent certificates of occupancy—is conditioned on its compliance with the Decision and the Fire Safety Code. Rave and Quattrucci have not interfered with Plaintiff's economic advantage in the Decision.

Count VI claims that Rave and Quattrucci intentionally interfered with Plaintiff's contractual relationship with its landlord, 275 Ferris Avenue, L.L.C. *Plaintiff's Complaint, ¶192.* To establish a prima facie case of intentional interference with contract, under Rhode Island law, Plaintiff must prove: (1) the existence of a contract, (2) Defendants knowledge of that contract, (3) Defendants intentional interference with that contract, and (4) damages resulting from the intentional interference. Further, as Plaintiff has alleged intentional interference, it must show legal malice, i.e., an intent to do harm without justification. *Belliveau Building Corp., 763 A2d. at 627.* Similar to the economic advantage claims, Plaintiff does not identify the alleged interference or, for that matter, what economic benefits it lost. Defendants

Quattrucci and Rave have had contact with Plaintiff's landlord regarding the Building Permit and Fire Code Safety compliance. However, there is nothing wrongful about these communications because, as owner of the property, the landlord must receive this information. Plaintiff is well-aware of this simple fact as the building permit application and plan review applications were filed in the name of the landlord and the building permit was issued in the name of the landlord. *See Exhibits A-E.* Plaintiff certainly cannot argue that the entity issued the Building Permit not be given notice of Fire Safety Code deficiencies. Additionally, Plaintiff does not state any damages. It continues as a tenant of the Property. Similar to the preceding economic interference claims, Plaintiff cannot establish the elements necessary to prove intentional interference with its lease.

Consequently, Defendants respectfully request that summary judgment enter in their behalf on Counts IV, V and VI of Plaintiff's Complaint.

**C. Civil Conspiracy**

Counts VIII, IX and X contain three (3) separate claims of civil conspiracy against Wise, Rave and Powers. In Rhode Island,

> In order to establish a conspiracy evidence must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. However, the doctrine of reasonable doubt has no place in a civil suit for damages where it is sufficient if the evidence is full, clear and satisfactory, and the conspiracy established by a preponderance of the evidence. This degree of proof, however, is necessary. The evidence must do more than raise a suspicion. It must lead to belief. *Stubbs v. Taft, 88 R.I. 462, 468 (R.I. 1959).*

Additionally, "civil conspiracy is not an independent basis of liability, but merely a means of establishing joint liability for tortious conduct; therefore, 'it requires a valid underlying intentional tort theory.'" *Read & Lundy, Inc. v. Wash. Trust Co., 840 A.2d 1099, 1102 (R.I. 2004) quoting Guibeault v. R.J. Reynolds Tobacco Co., 84 F.Supp.2d 263, 268 (D.R.I. 2000).*

In Count VIII, Plaintiff contends that Defendant Wise engaged in a civil conspiracy for the purpose of violating Rhode Island Code of Ethics, which states,

> No person subject to this code of ethics shall have any interest, financial or otherwise, direct or indirect, or engage in any business, employment, transaction, or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest and of his or her responsibilities as prescribed in the laws of this state, as defined in § 36-14-7. *R.I. GEN. LAWS § 36-14-5(a).*

Plaintiff contends that this statute was violated by Wise allegedly making a business referral of architect Dana Newbrook to Plaintiff.[5] Mr. Newbrook is a member of the Fire Safety Board and, according to Plaintiff, exercises regulatory jurisdiction over Wise. *Plaintiff's Complaint, at ¶206*. Evidently, this is the intentional tort upon which Plaintiff bases its civil conspiracy claim against Wise.

The facts as alleged by Plaintiff are insufficient, as a matter of law, to prove Wise liable for civil conspiracy. "Substantial conflict" is defined in the statute as,

> A person subject to this code of ethics has an interest which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest and of his or her responsibilities as prescribed in the laws of this state, if he or she has reason to believe or expect that he or she or any person within his or her family or any business associate, or any business by which the person is employed or which the person represents will derive a direct monetary gain or suffer a direct monetary loss, as the case may be, by reason of his or her official activity. *R.I. GEN. LAWS § 36-14-7.*

There is no allegation that Defendant Wise had any interest, financial or otherwise, or engaged in any business, employment, transaction or professional activity with Mr. Newbrook, which substantially conflicted with the proper discharge of his duties in this case. More importantly, Defendant does not allege that Defendant Wise derived a direct monetary gain from Mr. Newbrook. Section 36-14-5(a) of the General Laws cannot serve as the basis for the intentional

[5] Defendant Wise denies making a "business referral" of Mr. Newbrook to Plaintiff.

tort for the conspiracy. As a matter of law, Plaintiff cannot establish its civil conspiracy claim against Wise.

In Count IX of its Complaint, Plaintiff alleges that Rave engaged in a civil conspiracy with Defendant Burlingame. Similar to the allegations against Wise, Plaintiff contends that Rave made a business referral to Co-defendant Burlingame, someone who has regulatory control over Rave, and that this constitutes a violation of R.I. GEN. LAWS § 36-14-5(a).[6] The arguments recited for Wise apply equally to Rave and will not be repeated here. It is clear that, as matter of law, Plaintiff cannot establish its civil conspiracy claim against Rave.

Plaintiff's last conspiracy claim is contained in Count X of its Complaint. In this Count, Plaintiff contends that Rave, Quattrucci, Wise, and Powers engaged in a civil conspiracy in two (2) separate instances. First, Plaintiff contends that all four Defendants conspired to wrongfully deny Plaintiff its interests in the temporary and/or final certificate of occupancy. Second, Plaintiff alleges that all these Defendants conspired for the purpose of wrongfully interfering with Plaintiff's economic interests. *Plaintiff's Complaint, at ¶¶ 213-214.*
However, Plaintiff does not specifically identify the necessary underlying intentional tort theory to support the civil conspiracy.

These Defendants did not wrongfully deny Plaintiff a temporary or final certificate of occupancy. As argued *supra*, it is clear that compliance with the Fire Safety Code is a prerequisite to obtaining a temporary or final certificate of occupancy. *See, e.g., R.I. GEN. LAWS § 23-27.3-120*. It is also clear, and undisputed, that Plaintiff has not complied with the Fire Safety Code. Plaintiff was not wrongfully denied a temporary or final certificate of occupancy. Furthermore, even if Plaintiff was somehow able to prove entitlement to the certificates, it would still need to establish an independent ***intentional*** tort as the basis for the denial. It is not enough

[6] Rave denies making a referral to Co-defendant Burlingame.

to prove that Plaintiff was entitled to a certificate of occupancy, Plaintiff must also prove an intentional tort connected with the refusal to issue it. This, Plaintiff has not done.

Plaintiff cannot establish the elements necessary to prove its civil conspiracy claims and, thus, Defendants respectfully request that summary judgment enter in their behalf on Counts VIII, IX and X of Plaintiff's Complaint.

**D. Lender Liability**

In Count VII, Plaintiff contends that Defendant City of East Providence was a lender to Plaintiff for the purpose of economic development. *Plaintiff's Complaint, at ¶198*. This statement is true; the City of East Providence granted an Economic Development Loan to Plaintiff on May 17, 2006 for $99,000.00. The Complaint continues that as a lender, the Defendant City incurred certain duties and requirements of conduct regarding Plaintiff and then breached these duties. *Id. at ¶¶ 199 and 200*. However, Plaintiff never identifies these duties and requirements nor does it identify how they were breached by the Defendant City. Plaintiff does not specify a causal connection between these mysterious duties and responsibilities and the claims set forth in its Complaint. The inability to identify these necessary elements dooms Plaintiff's lender liability claim.

Defendants respectfully request that this Court enter summary judgment in their favor on Count VII of Plaintiff's Complaint.

**E. Estoppel**

In Count XI of its Complaint, Plaintiff contends that the Defendants, City of East Providence, Quattrucci and Wise, through the issuance and approval of the building permit, "impliedly promised" Plaintiff that it would be issued a certificate of occupancy and be permitted to commence operations if it were to complete the building plans approved with the issuance of

said permit. *Plaintiff's Complaint, at ¶217.* According to Plaintiff, injustice and inequity will result if these "implied promises" are not enforced. *Id. at ¶222.*

"[E]quitable estoppel is 'extraordinary' relief, which 'will not be applied unless the equities clearly [are] balanced in favor of the party seeking relief.'" *Southex Exhibitions, Inc. v. R.I. Builders Ass'n, 279 F.3d 94, 104 (1st Cir. 2002) quoting Greenwich Bay Yacht Basin Assoc. v. Brown, 537 A.2d 988, 991 (R.I. 1988).* The elements necessary to prove equitable estoppel are (1) an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed (in this case, Defendants) which is directed to another (here, Plaintiff) for the purpose of inducing the other to act or fail to act in reliance thereon, and (2) that such representation and conduct in fact did induce the other to act or fail to act to his injury. *Id. quoting Providence Teachers Union v. Providence Sch. Bd., 689 A.2d 388, 391-92 (R.I. 1997).* The burden for proving equitable estoppel is on Plaintiff. *Id.* "[T]he key element of an estoppel is intentionally induced prejudicial reliance." *El Marocco Club, Inc. v. Richardson, 746 A.2d 1228, 1234 (R.I. 2000) quoting East Greenwich Yacht Club v. Coastal Res. Mgmt. Council, 376 A.2d 682, 686 (R.I. 1977).*

Initially, Defendants state that Wise did not issue and approve the Building Permit. Although Plaintiff submitted plans to Defendant Wise, as required by R.I. GEN. LAWS § 23-27.3-113.5, the plans were never approved by Wise or the EPFD. Second, the implied promise of a Building Permit is this: if the permit holder completes the work in accordance with the Building and Fire Safety Codes, then a certificate of occupancy will be issued by the City. Once again, Plaintiff is confronted with the undisputed fact that the Building Code requires compliance with the Fire Safety Code and that it has not complied with the Fire Safety Code. Whether or not Plaintiff is issued a permanent certificate of occupancy depends on its compliance with the Fire

Safety Code. As *Exhibit I* appears to indicate, Plaintiff is making progress toward that goal. However, it has not yet reached that goal and, therefore, is clearly not entitled to a certificate of occupancy.

Defendants respectfully request that summary judgment enter in their favor on Count VII of Plaintiff's Complaint.

**F. Injunctive and Declaratory Relief**

Count I contains Plaintiff's claim for injunctive relief. Specifically, Plaintiff requests that Quattrucci be ordered to issue a certificate of occupancy for the Property forthwith. *Plaintiff's Complaint, at ¶165*. Plaintiff also requests that Defendant Rave, other City officials, the State Fire Marshal and the State Fire Safety Code Board of Review and Appeal cease and desist from interfering with the certificate of occupancy or the operations of Plaintiff. *Id*. This claim is based on Plaintiff's belief that it is entitled to a certificate of occupancy. The Court has already considered Plaintiff's request for injunctive relief and has not granted it. To the extent that this claim remains viable, Defendants simply state that, based on the arguments contained herein, Plaintiff is not entitled to a certificate of occupancy or to operate its business until it either complies with the Fire Safety Code or receives a variance from the Fire Safety Board.

In Count II, Plaintiff seeks a declaration that the Building Permit is valid, that Defendant Rave is not entitled to approve or reject the issuance of a certificate of occupancy or temporary certificate of occupancy, that Defendant Rave is not entitled to demand work over and above that required by the Building Permit and that Plaintiff is entitled to a certificate of occupancy. *Plaintiff's Complaint, at ¶171*. These issues have already been addressed in this memorandum and Defendants will not repeat the arguments. However, to summarize, Defendants have not sought to revoke the Building Permit. Defendant Rave is authorized and required to demand that

Plaintiff comply with the Fire Safety Code. By statute, the issuance of the temporary or final certificate of occupancy is dependent on Plaintiff's compliance with the Fire Safety Code. The certificate of occupancy cannot issue to Plaintiff since it is undisputed that the work on the Property is not in compliance with the Fire Safety Code. Plaintiff is not entitled to the declaratory relief it requests in Count II of its Complaint and Defendants respectfully request that summary judgment enter in its behalf on both Counts I and II.

## V. CONCLUSION

For the reasons stated above, as well as for those that may be argued before the Court, these Defendants respectfully request that their motion for summary judgment be granted in their favor on all counts of Plaintiff's Complaint.

Defendants[7]
By their attorneys,

*/s/ Marc DeSisto*
*/s/ Michael A. DeSisto*

Marc DeSisto (#2757)
Michael A. DeSisto (#2444)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com
michael@desistolaw.com

[7] See n. 1.

And,

*/s/ Timothy Chapman*

Timothy Chapman
Assistant Solicitor
CITY OF EAST PROVIDENCE
670 Willett Avenue
East Providence, RI 02915
(401) 433-5200
(401) 437-3618 fax
tchapman@cityofeastprov.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 15th day of April, 2007, that it is available for viewing and downloading from the ECF system, and that counsel of record listed below will receive notice via the ECF system.

Vicki J. Bejma
vbejma@smrobinsonlaw.com

Stephen M. Robinson
srobinson@smrobinsonlaw.com

Richard B. Woolley
rwoolley@riag.ri.gov

*/s/ Michael A. DeSisto*

Michael A. DeSisto