UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NARRAGANSETT PELLET CORP.,

Plaintiff,

v. C.A. No. 06-464 ML

CITY OF EAST PROVIDENCE, by and through its Treasurer, KEVIN J. FITZGERALD; ALBERT QUATTRUCCI, individually and in his capacity as Building Official of the City of East Providence; JOSEPH J. KLUCZNIK, individually and in his capacity as Fire Chief of the City of East Providence, DAVID RAVE, individually and in his capacities as Captain, East Providence Fire Department, East Providence Fire Marshall and Deputy State Fire Marshall; W. KEITH BURLINGAME, individually; CURTIS R. WISE, individually and in his capacity as Captain, East Providence Fire Marshal, East Providence Fire Marshal and Deputy State Fire Marshall; ROBERT POWERS, individually and in his capacity as Fire Alarm Inspector, City of East Providence,

Defendants.

**Memorandum and Order**

Plaintiff, Narragansett Pellet Corp., ("Plaintiff"), initially filed its complaint in Rhode Island Superior Court. The matter was removed to this Court based on federal question jurisdiction. Subsequent to removal, Plaintiff filed an amended eleven count-complaint. The claims contained in Plaintiff's amended complaint stem from a dispute between the City of East Providence and Plaintiff regarding the City's refusal to issue a certificate of occupancy. Defendants City of East Providence, Kevin J. Fitzgerald, Albert Quattrucci, Joseph J. Klucznik, David Rave, Curtis R. Wise, and Robert Powers ("City Defendants") contend that Plaintiff must

comply with applicable provisions of the Rhode Island Fire Safety Code ("fire safety code") before the certificate of occupancy can issue. Plaintiff argues that so long as it complies with the requirements set forth in the building permit previously issued by the City of East Providence it is entitled to issuance of the certificate of occupancy.

Plaintiff's second amended complaint includes a claim for injunctive and declaratory relief, a claim pursuant to 42 U.S.C. § 1983 for alleged violations of procedural and substantive due process, and numerous state law claims. The matter is presently before the Court on both the City Defendants' and Defendant W. Keith Burlingame's ("Burlingame") motions for summary judgment.

Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could resolve the issue in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Id. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Cas. Co. v. Canadian

Universal Ins. Co., 924 F.2d 370 (1st Cir. 1991).

Background

Plaintiff is a corporation with its principal place of business located at 275 Ferris Avenue ("Property") in East Providence. On or about April 10, 2006, the East Providence Fire Department (EPFD) received a building permit application and a plan review application for a portion of the Property.[1] The applications were the beginning steps in the approval process for Plaintiff to make renovations to the Property so that Plaintiff could use the Property to manufacture wood pellets. Wood pellets are manufactured from waste wood and are used in pellet stoves for home heating purposes as an alternative to other energy sources. The Property is owned by Ferris Avenue Realty LLC and occupied by Plaintiff and other tenants.

On May 8, 2006, William Carden ("Carden"), Plaintiff's president, met with EPFD Captain Curtis Wise ("Wise"), the East Providence fire marshal and deputy state fire marshal, and EPFD fire alarm inspector Robert Powers ("Powers") to discuss Plaintiff's proposed use of the Property. On May 23, 2006, the EPFD received a second building permit application and plan review application for the Property. The May building permit application was also filed with the East Providence building inspector's office. On May 23, 2006, the building inspector's office issued a building permit for the Property. The City Defendants claim that the EPFD did

[1]The Rhode Island building code provides that the application for the building permit "shall" be accompanied by plans and specifications with sufficiently clarity and detail to show the nature and character of the work to be performed. R.I. Gen. Laws § 23-27.3-113.5. The plans and specifications "shall" have "prior approval" in accordance with the fire safety code. Id. The Rhode Island fire safety code provides that prior to the "building permit being issued, all plans for buildings . . . shall be submitted to the authority having jurisdiction." R.I. Gen. Laws § 23-28.1-6. The "authority having jurisdiction shall approve or disapprove the completed set of plans within a reasonable time not to exceed ninety (90) days." Id. Unless specifically defined to the contrary in the fire safety code, the "authority having jurisdiction" for the enforcement of the fire safety code is the state fire marshal, the deputy state fire marshals, and assistant deputies. R.I. Gen. Laws § 23-28.1-5(2).

not approve either the April or May plan review or building permit applications. Plaintiff alleges, however, that Defendant Albert Quattrucci, ("Quattrucci") the building inspector for the City of East Providence, informed him Quattrucci "had received a verbal approval of the plans submitted with the application for [the] [b]uilding [p]ermit . . . and that verbal approval had been the standard practice for some time."[2] Carden Affidavit at ¶ 36. Plaintiff avers that in July 2006, Plaintiff requested that the City of East Providence issue a temporary certificate of occupancy.

On August 1, 2006, Powers and Captain David Rave,[3] met with Carden to address fire alarm issues. At this meeting Rave informed Carden that the EPFD had not approved Plaintiff's plans and specifications for the work being performed on the Property. Subsequent to the meeting, Rave sought additional information from Plaintiff with respect to certain manufacturing and dust collection processes and the fire suppression system. On August 7, 2006, Rave presented Plaintiff with a list identifying fire and life safety code deficiencies in the plans and specifications and informed Plaintiff of the right to appeal his decision to the state fire safety board of appeal and review ("fire safety board"). Plaintiff did not agree with the deficiency list. Rave informed Plaintiff that a third party would perform a review of Plaintiff's operations.[4] Rave selected Hughes Associates, Inc. ("Hughes") to conduct the third-party review. Burlingame was an employee of Hughes and assisted in the Hughes' review of the Property. During the time

---

[2] Carden's affidavit does not identify the individual who gave Quattrucci the verbal approval. However, Plaintiff's memorandum in support of its objection to Defendants' motion for summary judgment states that Quattrucci informed Carden that the "fire marshal" had verbally approved the plans. Plaintiff's Objection to Defendants' Motion for Summary Judgment at 12. The Court views the record in the light most favorable to Plaintiff and accepts that Plaintiff was informed that the fire marshal had verbally approved the plans.

[3] Rave succeeded Wise as East Providence fire marshal. Rave is also a deputy state fire marshal.

[4] The City Defendants aver that a third-party review provides a form of technical assistance to the fire marshal on complicated issues of fire safety code compliance.

period pertinent to the allegations in the second amended complaint, Burlingame was also a commissioner and/or vice chairman of the fire safety board. On or about August 16, 2006, Plaintiff submitted new plans and specifications for the Property to the EPFD. On August 17, 2006, Burlingame and another representative from Hughes met with representatives from both Plaintiff and the EPFD. On August 23, 2006, Hughes issued a report to Plaintiff affirming the fire and life safety code deficiencies. Rave reviewed Plaintiff's new plans and specifications, rejected them, and on September 6, 2006, issued another fire safety code deficiency list to Plaintiff.

On September 11, 2006, Rave, other members of the EPFD, representatives from the state fire marshal's office, Burlingame, another representative from Hughes, the owner of the Property, and Carden met to discuss the fire code deficiency report and the third-party review.[5] At some point not identified in the record, Plaintiff requested a one-day temporary certificate of occupancy to hold an open house on September 16, 2006. The request for the one-day temporary certificate of occupancy was approved by the state fire marshal. On September 15, 2006, Rave received an unsigned letter from Carden, on behalf of Plaintiff, wherein Plaintiff continued to request a temporary certificate of occupancy and agreed to conform to and complete the deficiency list no later than March 31, 2007. On September 27, 2006, Rave wrote Carden a letter outlining the list of items necessary to comply with the applicable fire and life safety codes in order to obtain a temporary certificate of occupancy.

---

[5]At some point not identified in the record, Plaintiff alleged that Burlingame had a conflict of interest purportedly as a result of his employment with Hughes and his membership on the fire safety board. Subsequent to the allegation, Burlingame states that he met with a staff attorney at the Rhode Island Ethics Commission and that the attorney "informally opined" that Burlingame did not have a statutory or regulatory requirement to disclose his membership on the fire safety board when "there was no matter before the board." Burlingame Affidavit at 2.

On October 11, 2006, the EPFD responded to a fire alarm at the Property. On the same day, the building inspector issued a cease and desist order to the Property owner. On or about October 26, 2006, Plaintiff filed an appeal to the fire safety board seeking variances from certain deficiencies and rulings made by Rave. The matter came before the fire safety board on October 31, 2006, and Burlingame recused himself from consideration of the matter. On or about November 3, 2006, the fire safety board issued a decision granting a variance to allow the EPFD fire marshal to approve the East Providence building official's discretionary issuance of a series of proposed temporary certificates of occupancy in accordance with certain timetables and conditions. On April 9, 2007, the state fire marshal authorized Rave to issue a temporary certificate of occupancy until June 30, 2007.

42 U.S.C. § 1983

Plaintiff first contends that Defendants Wise, Rave, Powers and Quattrucci violated 42 U.S.C. § 1983 by depriving it of a property interest in violation of its right to procedural and substantive due process. Plaintiff avers that state law created a property interest in Plaintiff's building permit and the "[e]xpectation of the [i]ssuance of [the] [c]ertificate of [o]ccupancy [o]nce the [a]pproved [c]onstruction [w]as [c]ompleted." Plaintiff's Objection to Defendants' Motion for Summary Judgment at 29. Defendants Wise, Rave, Powers and Quattrucci contend that Plaintiff did not have a property interest in the issuance of the certificate of occupancy.

Procedural due process rights protect an individual's or an entity's access to adequate process; substantive due process rights guarantee fundamentally just and fair government action. See Van Horn v. Town of Castine, 167 F. Supp. 2d 103 (D. Me. 2001). "To establish a due process claim, substantive or procedural, [Plaintiff] must first establish a property interest."

Macone v. Town of Wakefield, 277 F.3d 1, 9 (1st Cir. 2002). To show a property interest in a benefit, Plaintiff must demonstrate more than an abstract need or a unilateral expectation of the benefit, instead Plaintiff must have a legitimate claim of entitlement to the benefit. Id.

In essence, Plaintiff argues that it has a property interest in the issuance of the certificate of occupancy. The Rhode Island building code provides that

> [n]o building or structure subsequently enlarged, extended, or altered . . . shall be occupied or used until the certificate [of occupancy] has been issued by the building official, certifying that the work has been completed in accordance with the provisions of this code, the rehabilitation building and fire code for existing buildings and structures, the fire safety code . . . and the approved permits, and all of the applicable codes of all for which a permit is required.

R.I. Gen. Laws. § 23-27.3-120.2 (emphasis added). The plain and ordinary meaning of § 23-27.3-120.2 is clear: a certificate of occupancy may not issue unless and until, among other things, the "building official" certifies that the work has been completed in accordance with the provisions of the fire safety code. Id. "Upon written request from the owner of an existing building, the building official shall issue a certificate of use and occupancy, provided there are no violations of law or orders of the building official or the fire official pending . . . ." R.I. Gen. Laws § 23-27.3-120.3 (emphasis added). The certificate of occupancy "shall certify compliance with the provisions of the" state building code and "shall be issued by the building official within ten (10) days after final inspection; provided, that the provisions of the approved permits and of the applicable codes for which permits are required have been met." R.I. Gen. Laws § 23-27.3-120.6 (emphasis added).

The record reflects that there is an outstanding list of fire safety code deficiencies.[6] See City Defendants' Statement of Undisputed Facts at ¶ 11, 14, 17, 22.[7] According to state law, the certificate of occupancy shall issue only if the Property, among other things, complies with the fire safety code. See R.I. Gen. Laws §§ 23-27.3-120.2; see generally 23-27.3-120.3; 23-27.3-120.6. Taking the undisputed facts in the light most favorable to Plaintiff, this court finds that there are outstanding fire safety code deficiencies. Consequently, Quattrucci, the "building official," cannot certify that the "work has been completed in accordance with the provisions" of the fire safety code. R.I. Gen. Laws § 23-27.3-120.2; see generally R.I. Gen. Laws §§ 23-27.3-120.3; 23-27.3-120.6. Because Plaintiff has not met at least one of the state law requirements for the issuance of a certificate of occupancy (compliance with the fire safety code), Plaintiff cannot have a legitimate claim of entitlement to the issuance of the certificate of occupancy. See Macone, 277 F.3d at 9; see generally Frooks v. Town of Cortlandt, 997 F. Supp. 438, 451 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999) (plaintiff could not claim that he was constitutionally deprived of a certificate of occupancy because he could not allege he had met all of the regulatory requirements for receiving the certificate of occupancy); Deepwells Estates Inc. v. Incorporated Village of Head of the Harbor, 973 F. Supp. 338, 349 (E.D.N.Y. 1997), appeal dismissed, 162 F.3d 1147 (2d Cir. 1998) (plaintiffs have cognizable property interest in the

---

[6] Plaintiff contends that Rave's authority begins and ends once Rave approves the plans submitted in connection with the application for the building permit. Plaintiff is mistaken. The record reflects that Rave is a deputy state fire marshal, and as such, is charged with enforcement of the fire safety code. See e.g. R.I. Gen. Laws §§ 23-28.2-4; 23-28.1-5(2); 23-28.2-6(1).

[7] In fact, at the time Plaintiff filed its response to Defendants' motion Plaintiff admitted that "[a]ctivity in the form of hearings and discussions continue between Plaintiff, the EPFD, the Rhode Island State Fire Marshal's office and the [fire safety board] regarding [fire safety code] compliance with the Property." Defendants' Statement of Undisputed Facts at ¶ 22.

issuance of a certificate of occupancy if plaintiffs satisfied all the regulatory requirements governing the issuance of the certificate). As such, Plaintiff's procedural and substantive due process claims fail because Plaintiff cannot establish a constitutionally recognized property interest in the issuance of the certificate of occupancy.[8] See generally Macone, 277 F.3d at 9 (to establish a procedural or substantive due process claim Plaintiff must first establish a property interest).[9]

To the extent that Plaintiff also argues that a temporary certificate of occupancy should issue, its position fares no better. Rhode Island law governing the issuance of a temporary certificate of occupancy provides that

> [u]pon the request of the holder of a permit, the building official may issue a temporary certificate of occupancy for a building or structure, or part thereof, before the entire work covered by the permit shall have been completed; provided, that the portion or portions may be occupied safely prior to full completion of the building without endangering life or public health, safely and welfare; and, provided further, that the agencies having jurisdiction over permits issued under other applicable codes are notified of the decision to issue a certificate.

R.I. Gen. Laws § 23-27.3-120.5 (emphasis added). According to state law, it is within the building inspector's discretion whether or not to issue a temporary certificate of occupancy.

---

[8]Plaintiff argues that any property interest conferred by the building permit somehow "logically extends" to the issuance of the certificate of occupancy. Plaintiff's Objection to Defendants' Motion for Summary Judgment at 30. Plaintiff avers that once the building permit was issued and construction began in reliance on the permit, Plaintiff had a "reasonable expectation" in the issuance of a certificate of occupancy, provided that Plaintiff performed the work approved. Id. Plaintiff's argument fails on several fronts. First, Plaintiff blurs the distinction between a building permit and a certificate of occupancy. Generally, the building permit is the permission or authorization to build or alter a structure while the certificate of occupancy certifies that the premises, as built or altered, complies with all applicable laws and/or regulations/ordinances/codes. Second, a property interest does not arise from a "reasonable expectation;" it arises from a legitimate claim of entitlement. See Macone, 277 F.3d at 9. Last, Plaintiff's position is contrary to Rhode Island law. See R.I. Gen. Laws §§ 23-27.3-120.2; 23-27.3-120.3; 23-27.3-120.6.

[9]Because the Court finds that Plaintiff does not have a property interest in the issuance of the certificate of occupancy, the Court need not analyze the second prongs of the procedural and substantive due process claims.

See id. "[D]iscretion evidences a lack of intent to provide [Plaintiff] with a protected property interest." Young v. Wall, 359 F. Supp. 2d 84, 91 (D.R.I. 2005). "Where the statute or policy . . . grants to the decisionmaker discretionary authority in implementing it, a protected property interest is not created." Jennings v. Lombardi, 70 F.3d 994, 996 (8th Cir. 1995).

Plaintiff also avers that the City of East Providence and Klucznik failed to adequately and properly supervise and/or train Wise and Rave and that the City failed to adequately and properly supervise and/or train Klucznik. Because the Court finds that Plaintiff did not suffer a constitutional injury, neither the City nor Klucznik, as a supervisor, can be held liable for the failure to train or supervise. It "is axiomatic that a § 1983 plaintiff cannot impose liability upon a municipal employer, unless he demonstrates, inter alia, that an employee of the municipality deprived him of a constitutional right." Ernst v. City of Dayton, No. C-3-01-145, 2004 WL 5345483 at *4 n.7 (S.D. Ohio March 10, 2004).

Injunctive and Declaratory Relief

Plaintiff requests that the Court order Quattrucci to issue a certificate of occupancy for the Property and that the Court order Rave, other city officials, the state fire marshal, and the fire safety board to cease and desist from interfering with the issuance of the certificate of occupancy or otherwise interfering with the operations of Plaintiff. As noted above, Plaintiff has not met one of the state law requirements governing the issuance of a certificate of occupancy. Consequently, this Court denies Plaintiff's request for injunctive relief.

Plaintiff also seeks a declaration that (1) the building permit is valid, (2) Rave is not "entitled" to approve or reject the issuance of a certificate of occupancy and/or a temporary certificate of occupancy and is not "entitled" to demand work over and above that which was

required by the building permit, and (3) Plaintiff is "entitled" to a certificate of occupancy. Second Amended Complaint at ¶ 171. Plaintiff's claim for declaratory relief fairs no better than its claim for injunctive relief.

The record does not reflect that the building permit has been revoked or invalidated. While the Court agrees with Plaintiff that Rave is not "entitled" to approve or reject the issuance of a certificate of occupancy or a temporary certificate of occupancy,[10] Rave is "entitled" to determine if Plaintiff has complied with the fire safety code. Plaintiff has not complied with the fire safety code – a requirement that must be met before the certificate of occupancy may issue. Because Plaintiff has not complied with the fire safety code its request for declaratory relief is denied.

<u>Civil Conspiracy</u>

Plaintiff's alleges that Burlingame engaged in a civil conspiracy with Rave for the purpose of violating the Rhode Island Code of Ethics ("Code"), specifically R.I. Gen. Laws § 36-14-5(a).[11] Plaintiff alleges that Burlingame conspired with Rave to gain business referrals for Hughes purportedly because Rave selected Hughes to perform the third-party review of the Property. Plaintiff alleges that as a member of the fire safety board, Burlingame exercised "public regulatory jurisdiction" over Rave. Second Amended Complaint at ¶ 210. Plaintiff avers that Burlingame's conduct violates the Code because the Code forbids public officials from

[10]As noted above, that responsibility lies with the East Providence "building official," Quattrucci, <u>see</u> R.I. Gen. Laws §§ 23-27.3-120.2; 23-27.3-120.3; 23-27.3-120.5; 23-27.3-120.6.

[11]In count IX, Plaintiff alleges that Rave engaged in a civil conspiracy with Burlingame. However, in that count, Plaintiff demands judgment only "against the Defendant Rave, including compensatory and punitive damages, attorneys' fees and costs." Second Amended Complaint ¶ 211. Plaintiff has not specifically demanded judgment against Burlingame. The Court, however, reads the complaint as a whole, including the specific allegations against Burlingame, and concludes that Plaintiff also demands judgment from Burlingame.

engaging in any "business, employment, transaction, or professional activity, or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his or her duties or employment in the public interest." Plaintiff's Objection to Defendant W. Keith Burlingame's Motion for Summary Judgment at 4. Plaintiff concludes that because Burlingame, a member of the fire safety board, exercised regulatory authority over Rave as fire marshal, it was a violation of the Code to accept a business referral from Rave. Burlingame argues, inter alia, that Plaintiff's conspiracy claim fails as a matter of law because it is premised upon an alleged violation of the Code and the Code does not provide for a private right of action.

A civil conspiracy is an agreement between two or more parties to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means. Smith v. O'Connell, 997 F. Supp. 226, 241 (D.R.I. 1998), aff'd sub nom. Kelly v. Marcantonio, 187 F.3d 192 (1st Cir. 1999). "A civil conspiracy claim requires the specific intent to do something illegal or tortious." Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 268 (D.R.I. 2000). Civil conspiracy is "not an independent basis of liability. It is a means for establishing joint liability for other tortious conduct; therefore it requires a valid underlying intentional tort theory." Read & Lundy, Inc. v. Washington Trust Company of Westerly, 840 A.2d 1099, 1102 (R.I. 2004) (emphasis added) (internal quotation marks and citation omitted).

Plaintiff's civil conspiracy claim is based upon an alleged violation of the Code. Enforcement of the Code is committed exclusively to "the Rhode Island Ethics Commission, an independent, nonpartisan body. . . . T[he] Commission is vested with broad administrative, educational, advisory, investigative, adjudicative, and removal powers, including the power to investigate and adjudicate specific complaints of Code violations." Providence Journal Co. v.

Newton, 723 F. Supp. 846, 849 (D.R.I. 1989); see also R.I. Gen. Laws §§ 36-14-8; 36-14-9 through 36-14-14; In re Advisory Opinion to the Governor, 612 A.2d 1, 10-11 (R.I. 1992) (the members of the Commission are empowered "with the authority to develop a code of ethics, to investigate violations, and to enforce its provisions"). Investigations into alleged violations of the Code are commenced by the filing of a complaint and any individual or business entity may file a complaint with the Commission. R.I. Gen. Laws § 36-14-12(b). Among other potential penalties, the Code provides for a civil fine for violations. See R.I. Gen. Laws § 36-14-13(d)(3).

The Rhode Island Supreme Court has not expressly held whether a private cause of action is viable under the Code. This Court must therefore predict what the Rhode Island Supreme Court would hold if faced with this issue. In forecasting what the Rhode Island Supreme Court would do "the court must look to relevant, i.e., analogous, state court decisions . . . and may assay sister state adjudications of the issue." Providence & Worcester Railroad Co. v. Sargent & Greenleaf, Inc., 802 F. Supp. 680, 685 (D.R.I. 1992) (internal quotation marks and citation omitted).

Under Rhode Island law, the task of assigning remedies for statutory rights is a legislative responsibility. Stebbins v. Wells, 818 A.2d 711 (R.I. 2003). When a statute "establishes rights not cognizable at common law, that statute is subject to strict construction." Bandoni v. State, 715 A.2d 580, 584 (R.I. 1998) (internal quotation marks and citation omitted). The Code does not provide for a private right of action.

Here, the Legislature has prescribed a particular enforcement provision:

> namely, [among other provisions][12] that a violation of the [Code] subjects the violator to a civil penalty of [up to $25,000] per occurrence. See [R.I. Gen. Laws § 36-14-13(d)(3).] This enforcement provision contemplates a civil fine for violations of the [Code], rather than a private lawsuit for damages.

Stebbins, 818 A.2d at 716. "When a statute does not plainly provide for a private cause of action [for damages], such a right cannot be inferred." Id. Based on the foregoing, this Court finds that Plaintiff could not bring a private right of action against Burlingame or Rave for an alleged violation of the Code.

Having determined that Plaintiff could not bring a private right of action against Rave or Burlingame under the Code, the Court must now determine whether, under Rhode Island law, a claim of civil conspiracy based upon an alleged violation of the Code will lie when Plaintiff does not have a cause of action under the statute allegedly violated. Rhode Island law is clear; civil conspiracy is not an independent basis of liability, it requires a valid claim of an underlying intentional tort. See Read & Lundy, 840 A.2d at 1102. Because Plaintiff does not have a private right of action under the Code, Plaintiff cannot establish a valid underlying tort to support the conspiracy allegation. As a result, Plaintiff's conspiracy claim against Burlingame and Rave fails as a matter of law. See id. (civil conspiracy claim requires valid underlying intentional tort); see also In re Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 790 (3d Cir. 1999) ("[a] claim of civil conspiracy cannot rest solely upon the violation of a . . . statute for which there is no corresponding private right of action"); Livingston v. Shore Slurry Seal, Inc.,

---

[12] The Code provides that the Ethics Commission, in addition to imposing a civil penalty, may (1) require that the violator cease and desist violating the applicable provision of the Code; (2) require that the violator file any report, statement or other information as required by the Code; (3) refer the matter to the Attorney General; and (4) remove the violator from office. R.I. Gen. Laws § 36-14-13(d)(1), ( 2), (4), & (5). Additionally, any person who knowingly and willfully violates the Code is guilty of a misdemeanor and is punishable by a fine of not more than $1,000 and/or imprisonment for no longer than one year. R.I. Gen. Laws § 36-14-19.

98 F. Supp. 2d 594 (D.N.J. 2000) (same); Alexander & Alexander, Inc. v. B. Dixon Evander & Associates, Inc., 596 A.2d 687 (Md. Ct. Spec. App. 1991) (same); see also Wells v. Shelter General Insurance Co., 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002) (finding no support for the contention that a civil conspiracy claim can "stand alone, without reference to an underlying tort" and stating that "authority to the contrary is . . . legion").

Plaintiff also brings a conspiracy claim against Wise[13] which is also based upon an alleged violation of the Code. The City Defendants' motion for summary judgment on this claim is also granted for the same reasons as noted above; the Code does not provide for a private right of action and thus Plaintiff's allegations cannot support a civil conspiracy claim.

Remaining State Law Claims

Plaintiff also alleges several other state law claims[14] against a revolving spectrum of the City Defendants. The First Circuit has recognized that a moving party in a motion for summary judgment must meet a high standard. See generally Thyssen Plastik Anger KG v. Induplas, Inc., 576 F.2d 400 (1st Cir. 1978). The Court has reviewed the state law claims and while the Court acknowledges that they are of questionable merit, the Court cannot say with certainty that the City Defendants have met their burden and are entitled to judgment as a matter of law.

Conclusion

The City Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's 42 U.S.C. § 1983 claim (Count III), the injunctive and declaratory relief claims

[13] Plaintiff alleges that Wise conspired with another individual not a defendant in this action.

[14] The claims include intentional interference with economic advantage, intentional interference with contractual and advantageous relations, "lender liability," estoppel, and a civil conspiracy claim. Second Amended Complaint Counts IV, V, VI, VII, X, XI.

(Counts I and II) and the civil conspiracy claims (Counts VIII and IX) and DENIED with respect to Plaintiff's remaining state law claims (Counts IV-VII, and X, XI). Burlingame's motion for summary judgment is granted with respect to the civil conspiracy claim (Count IX).

SO ORDERED.

Mary M. Lisi

Mary M. Lisi
Chief United States District Judge
September 25, 2007